### A92A1663. MILAN v. THE STATE.
(427 SE2d 573)

BLACKBURN, Judge.
Willie Milam, a prisoner at Georgia State Prison at Reidsville, Georgia, was convicted of aggravated assault upon a correctional officer, OCGA § 16-5-21 (e), and unauthorized possession of a weapon by an inmate, OCGA § 42-5-18 (b). Although the record and the style of this case on appeal indicate that the defendant's surname is "Mila*n*," his counsel has informed this Court that the correct surname is "Mila*m*." In this opinion, we shall refer to him by his correct surname. Milam contends that the State impermissibly placed his character in issue, and that the trial court erred by denying his motion for a change of venue.

1. Milam claims that the State placed his character in issue. He testified at trial, and during cross-examination the following series of questions and answers took place: "Q. . . . Who was Horan Milan [sic]? A. That was my father. Q. He's not alive anymore? A. No. Q. And that's the reason you're in prison, isn't it? A. Right. Q. You killed him didn't you? A. Yeah." Milam did not object to this line of questioning at trial, and raised the character issue for the first time on motion for new trial. On appeal, he contends that the trial court erred by denying the ground of his motion for new trial that was based on that issue.

We find no error, since Milam's failure to object at trial consti-

tuted a waiver. *Johnson v. State*, 204 Ga. App. 277 (1) (419 SE2d 118) (1992). Moreover, we note that all of the information elicited during the above portion of the cross-examination, with the exception of the fact that the victim was Milam's father, was cumulative of evidence that was earlier admitted without objection.

2. Milam contends that the trial court erred by denying his motion for a change of venue. He was tried and convicted in Tattnall County, wherein lies the Georgia State Prison (hereinafter, "the Prison"). Before trial he filed a motion for change of venue, which was not heard until after the voir dire at trial. No transcription of the voir dire was included in the record transmitted to this Court; instead, the transcript begins with the post-voir dire hearing on the motion to change venue: "THE COURT: Is there . . . any evidence that you desire to introduce? . . . MS. CHENEY [DEFENSE COUNSEL]: I did want to say something about the fact that the panel that the defendant chose the jury from, when looking at . . . the make up [sic] of the panel, of the forty-four prospective jurors, sixteen of them had close relationships to people at Georgia State Prison; that is, they either were employed there themselves, their spouse or an immediate family member was employed there. There were another four or five who had more distant relations, whether they were cousins or in-laws, aunts or uncles. This didn't even take into account those that had close friends and other types of relationships with people out there. I think that based on that it's indicative of the fact that it's very hard to separate the residents of Tattnall County from the prison. It's the major employer here and it's the most visible. There is no way that County residents can separate themselves from the prejudices that they have against the inmates at the prison; and for this reason, we would move for a change of venue. . . . MR. DURDEN [DISTRICT ATTORNEY]: . . . As I recall, during jury selection, of course we went through the statutory questions and . . . nobody answered in the affirmative that they had a . . . preconceived idea about the way the case should come out or any bias, and in the general voir dire nothing of that effect came out. . . . THE COURT: All right. The Court's going to deny the motion for change of venue. It's denied."

On appeal Milam contends that the trial court's failure to change venue violated his right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution.

"In *Street v. State*, 237 Ga. 307, 311 (227 SE2d 750) (1976), [the Georgia Supreme Court] concluded regarding motions for change of venue 'that under the decisions of the Supreme Court of the United States, to find that the petitioner did not receive a fair trial, petitioner must show (1) that the setting of the trial was inherently prejudicial [sometimes referred to as the "presumptive prejudice" test] or (2) that the jury selection process showed actual prejudice to a degree

that rendered a fair trial impossible.' The second test involves review of the voir dire examination of potential jurors. [Cit.]" *Kesler v. State*, 249 Ga. 462, 471-472 (7) (291 SE2d 497) (1982). Accord *Chancey v. State*, 256 Ga. 415, 429 (5) (349 SE2d 717) (1986). "Traditionally, a defendant seeking a change of venue on the basis that the setting of the trial is inherently prejudicial relies heavily if not primarily or exclusively on news media reports. . . ." *Kesler* at 472; accord *Chancey* at 429. But defendants sometimes also seek to show inherent prejudice has resulted from "widespread community fear and bias." *Chancey* at 431 (5B). See *Jordan v. State*, 247 Ga. 328, 336-337 (5) (276 SE2d 224) (1981) (defendant attempted to show bias of citizens in Tattnall County against inmates of Georgia State Prison), federal writ of habeas corpus granted on other ground, *Jordan v. Lippman*, 763 F2d 1265, 1266 (11th Cir. 1985).

In the present case Milam's argument is based neither on allegations of actual prejudice nor inherent prejudice stemming from pretrial publicity, and is confined solely to an allegation of inherent prejudice due to widespread community fear and bias associated with the presence of the Prison in Tattnall County. The test for evaluating such an inherent prejudice contention was set forth in *Chancey*, supra, 256 Ga. at 431 (5B): "Was the setting of the trial inherently prejudicial as a result of the widespread community fear and bias alleged by the appellants?

"To answer this question in the affirmative would be to hold that appellants were entitled to a change of venue without the trial court's even summoning prospective jurors to court and examining them in order to determine whether those prospective jurors actually summoned could in fact serve as fair and impartial jurors in the case. Thus, in determining whether community bias rendered the trial setting inherently prejudicial, as in determining whether pretrial publicity rendered the setting of the trial inherently prejudicial, we hold that questions should be asked as to whether the trial was held in an inflammatory atmosphere and whether there was a 'wave of public passion.' [Cit.] If factors such as these do not exist, the question of whether the criminal defendant is able to obtain a fair trial in a particular case should be determined through the jury selection process."

The issue in the present case is, then, whether Milam demonstrated that, due to widespread community fear and bias, the trial was held in an inflammatory atmosphere amid a wave of public passion. On appeal, Milam contends that the Prison "is one of the largest employers in the County," and that "many persons, if not all, on the ven[ire]" work there, have relatives or neighbors working there, or are otherwise associated with persons working there. He argues that any act of violence by an inmate against an employee of the Prison therefore "will be met with enmity in the minds of prospective jurors," and

that his right to an impartial jury "was significantly impaired by the community enmity directed at him and reflected by the panel of jurors drawn to try appellant." Milam further argues that "Tattnall County is a largely rural county with a scattered population, and the people of the county naturally have fears and apprehensions about the inmates which prevent jurors from being impartial." Finally, he argues that Tattnall County is the site of many prosecutions of Prison inmates; that the "entire jury pool of the county has been saturated with and infected by these cases and the events which gave rise to them"; and that prospective jurors are therefore predisposed to convict inmates.

We find no merit in this argument. Initially, we accept, through judicial notice, the assertion of Milam's counsel on appeal that Tattnall County is a largely rural county (with a population of 17,722 according to the 1990 Census). Further, we assume without deciding that the factual assertions of Milam's counsel during the hearing on his motion to change venue constitute evidence; thus, we assume for purposes of this opinion that Milam established that the Prison was one of the largest employers in Tattnall County (at trial, counsel said it was "the major employer," but on appeal modified that assertion to "one of the largest"), and that the prospective jurors on Milam's venire either were employed at the Prison or had relatives, friends, or acquaintances there.

However, there is no evidence to support Milam's conclusory allegations that prospective jurors felt enmity toward acts of violence by inmates against Prison employees, or that the panel of jurors drawn to try him reflected that enmity. In the latter regard, Milam has provided us with no evidence whether he attempted to remove any prospective jurors for cause due to bias, whether any jurors were removed for bias, or even whether the jurors on the panel which was seated had any connection to the Prison through their own employment or the employment of others.

Similarly, he has failed to show that any generalized fears and apprehensions on the part of jurors resulted from the rural nature of Tattnall County. Finally, he has failed to demonstrate either the number of prosecutions of inmates in Tattnall County or a predisposition of jurors to convict resulting from such prosecutions.

Pretermitting whether the above unproven factual assertions by Milam would demonstrate, if supported by evidence, that the setting of the trial was inherently prejudicial due to widespread community fear and bias, the facts that we have accepted for purposes of this opinion as proven — the rural nature of Tattnall County, coupled with its status as one of the largest employers and its resultant impact on the prospective jurors on Milam's panel — were insufficient to demonstrate either widespread community fear and bias or that

the trial was held in an inflammatory atmosphere amid a wave of public passion. "We hold that, based on the present record, the trial court cannot be said to have abused its discretion or erred in ruling that there has been no such showing here of an inherently prejudicial trial setting as a result of community fear and bias." *Chancey*, supra, 256 Ga. at 431 (5B).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 1, 1993.

Cheney & Cheney, Sharon G. Cheney, for appellant.
Dupont K. Cheney, District Attorney, J. Thomas Durden, Jr., Assistant District Attorney, for appellee.