## A92A1910. MARLOW v. THE STATE.
### (427 SE2d 600)

BLACKBURN, Judge.

The appellant, Jeneile Marlow, was convicted of armed robbery and sentenced to serve five years in prison. On appeal, she contends that the trial court erred in denying her motion to sever, and that the evidence was insufficient to support her conviction.

At the trial, Melissa Bigham testified that around 11:15 p.m. on June 17, 1991, she stopped at a convenience store on Riverdale Road on her way home from work. After making her purchase, as she attempted to enter her car (a white 1991 Ford Mustang), two black males wearing red bandannas over their faces approached her and told her to get out and leave everything. One of the men held a long chrome pistol. As they got in her car and drove away, a Jeep Cherokee, which had been parked next to her car, followed; although she was unable to see the driver of the Jeep, she observed a white male occupant in the vehicle. Bigham's purse, containing her wallet, driver's license, Social Security card, and charge cards, was in her car. When the police recovered her car a few days later, the vehicle's tag had been changed.

Late in the evening on June 20, 1991, a Roswell police officer stopped a white 1991 Ford Mustang that was occupied by Marcus Johnson, Paul Johnson, Daniel Belcher, and the appellant. Belcher was the only caucasian in the group. The vehicle was determined to be that stolen from Melissa Bigham three days earlier. A search of the vehicle uncovered a .22 caliber chrome revolver under the driver's

seat, and Bigham's purse on the front passenger floorboard. Paul Johnson was driving the car at the time of the stop, and Belcher was sitting behind the driver's seat.

The appellant gave a custodial statement in which she admitted being in the Jeep Cherokee when the victim's Ford Mustang was taken. She recalled the victim coming out of the convenience store and walking away from her car when Marcus Johnson got in the car. As Johnson drove away in the Mustang, the appellant followed him driving the Jeep Cherokee. They ended up at her apartment, where she went through the victim's purse that was in the car. She found credit cards and a checkbook, and threw away some papers, pictures, and a wallet. Also, someone put a Ford dealer drive-out tag on the car. The appellant indicated that the Jeep Cherokee could be found parked in front of her apartment, and the police found it there.

Marcus Johnson also gave a custodial statement, in which he admitted his participation in the robbery. On the evening in question, they had been driving around discussing "thieving," when they stopped at the convenience store where the Ford Mustang was parked. As the victim started to enter her car, he and Paul Johnson had taken her car. Paul wore a bandanna and had a gun, but it was owned by Daniel Belcher. He stated that the appellant's involvement in the act consisted only of her driving the Jeep Cherokee after they took the Ford Mustang. However, he also stated that the appellant had kept some of the credit cards and driver's license found in the purse.

The appellant was indicted along with Marcus Johnson, Paul Johnson, and Daniel Belcher. The day before the scheduled trial, Marcus Johnson pleaded guilty. Originally, the District Attorney had intended to try the defendants separately, but after Johnson's guilty plea, the remaining defendants were tried jointly.

Marcus Johnson testified at the trial and contradicted portions of his custodial statement. He denied ever discussing "thieving" or stealing a car in the appellant's presence; stealing the victim's car had actually been a spontaneous decision. When he had taken the car, the keys were in the vehicle and the owner was not present. He also denied anyone using a gun or wearing a bandanna during the theft. He stated further that the appellant had not known he and Paul Johnson were stealing the Ford Mustang at the time it happened.

The appellant also testified at trial and likewise contradicted portions of her custodial statement. During the early evening hours of June 17, 1991, while it was still daylight, she had accompanied Marcus Johnson and the two co-defendants to go pick up a car which she thought belonged to Marcus Johnson. When they spotted the Ford Mustang at a convenience store, they parked beside it and Marcus and Paul Johnson got the car. A woman was the only other person in

the general vicinity of the car, but she was not really near it. She did not recognize the victim who testified at trial as that woman. She had driven the Jeep, following Marcus and Paul Johnson in the Mustang to her apartment. She went in first, and the others stayed outside for a while. When they came in, Marcus gave her the purse, which he claimed he had found. She accepted the purse without concern, because it was not unusual to find things in Roswell. She had not seen anyone go through the purse, and had not seen a gun until the night they were arrested. The appellant admitted that she had used the purse afterwards, and had not realized that the victim's cards were in a zippered side compartment. When asked about the discrepancies between her custodial statement and her trial testimony, she explained that in making the custodial statement, she had merely recounted what the interrogating officer had told her to say.

1. The appellant contends that the trial court erred in denying her motion for severance, because the joint trial made it impossible for the jury to separate the evidence as to each defendant. More specifically, she asserts that the corroborating evidence did not show her to be a participant in the armed robbery.

"The grant or denial of a motion to sever is within the discretion of the trial court; and absent an abuse of discretion, the denial of a motion to sever will not be reversed." *Ledbetter v. State*, 202 Ga. App. 524, 525 (414 SE2d 737) (1992). "The trial court in exercising its discretion is to consider three elements: Whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses." *Harrell v. State*, 253 Ga. 474, 475 (321 SE2d 739) (1984).

In the instant case, the state took great efforts to organize the presentation of evidence in a manner to show each defendant's individual role in the armed robbery. With regard to the appellant, the state attempted to prove that she facilitated the armed robbery by driving the Jeep Cherokee away from the scene, and that she shared in the fruits of the robbery. The joint trial could not have created any confusion as to the appellant's participation as a driver, because that fact was undisputed. The other evidence most strongly demonstrating the appellant's knowing participation in the crime, i.e., her emptying and use of the victim's purse and her knowledge of the changing of the tag on the stolen car, was supplied primarily by the appellant's own statements, and not the evidence against the co-defendants. The trial court emphasized in its charge to the jury that each defendant must be considered individually.

Further, the defenses raised by the defendants were not antagonistic. Daniel Belcher and Paul Johnson did not testify or present any

other evidence, but neither attempted to implicate the appellant. In his trial testimony, Marcus Johnson actually attempted to bolster the appellant's defense that she was not a knowing participant in the robbery. Under these circumstances, there was ample evidence to show that the appellant was a party to the crime, and she has failed to demonstrate any prejudice that would have been avoided by a separate trial. *Harrell v. State*, supra.

2. The appellant also contends that the evidence was insufficient to support her conviction, because there was no showing that she had been aware of any unlawful activity, and the corroboration of the accomplice's testimony failed to connect her with the crime.

" 'The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt.' [Cits.]" *Harrison v. State*, 259 Ga. 486, 488 (384 SE2d 643) (1989). The sufficiency of the corroboration evidence is a matter for the jury to determine; only slight corroboration connecting the defendant to the crime is required; and evidence of a defendant's conduct before and after the commission of a crime may support an inference that she participated in the crime. Id.

The custodial statement and testimony of Marcus Johnson, particularly as to how the crime occurred, was corroborated in large part by the testimony of the victim, although this corroboration did not connect the appellant to the event. However, the appellant's own custodial statement, in which she admitted to driving the Jeep Cherokee away from the scene of the robbery, emptying and sorting out the contents of the victim's purse, and knowing about the replacement of the stolen vehicle's tag with a Ford dealer drive-out tag, served both to corroborate the custodial statement of Marcus Johnson and to connect the appellant with the crime.

OCGA § 16-2-20 (a) provides that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Under OCGA § 16-2-20 (b) (3), a person is concerned in the commission of a crime if she "[i]ntentionally aids or abets in the commission of the crime. . . ." The evidence presented by the state against the appellant established her culpability for the armed robbery of the victim's automobile at least upon this basis. Viewing that evidence in the light most favorable to uphold the jury's verdict, we conclude that the evidence was sufficient to authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the armed robbery with which she was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61

LE2d 560) (1979). Accordingly, the trial court properly denied the appellant's motion for directed verdict of acquittal.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 5, 1993.

*Lillian L. Neal*, for appellant.

*Robert E. Keller, District Attorney, Daniel J. Cahill, Jr., Assistant District Attorney*, for appellee.