A93A2605. BLIGE v. THE STATE.
(440 SE2d 521)

ANDREWS, Judge.

Prince Leon Blige was tried and convicted of rape and burglary. The victim testified at trial that on November 14, 1990, at about 3:00 a.m. she was asleep on the couch at her residence and was awakened by a man standing over her who was touching her. He told her to get off the couch and led her into the bedroom where he raped her. She later identified Blige as her assailant.

An expert witness testified that a DNA sample taken from semen removed from the victim matched that of DNA found in Blige's blood. Another expert witness testified that the probability of selecting an unrelated individual of the population from the same race who had a matching genetic profile as Blige was one in eight million.

The victim from a prior attempted rape involving Blige also testified.

1. In his first enumeration of error, Blige claims the trial court erred in denying his motion for a change of venue based on negative publicity which he had received. He claimed that his trial was unfair because of negative publicity both he and his family had received from the local news.

A hearing was held, during which several news directors of local television stations testified. The first, David Winstrom, testified that he had presented numerous stories about Nathaniel Blige, appellant's brother, but had not presented any stories regarding Prince Blige.

Douglas Weathers, another news director, testified next. He stated that he had presented three stories on three of the Blige brothers. He recalled that a story ran regarding one of Prince Blige's brothers who cut off a lady's finger. Weathers also recalled that a story was presented regarding the fact that all of the brothers were involved in criminal activity.

Weathers stated that there were also stories regarding Prince Blige. He recalled a statement a judge of recorders' court had made with respect to a charge against Prince Blige for shoplifting, in July 1990, that he was not going to set bond for Prince Blige because he was "sick and tired of these Blige brothers coming before him one

after the other in criminal activities." That statement was the subject of a story the station ran.

Mark Taylor, a third news director testified. He stated that his station had presented two stories on Prince Blige, one of which included the recorders' court judge's statement.

A writer for the Savannah newspaper, Jan Skutch, was also called as a witness. He recalled stories regarding the Blige brothers. He testified that one story involving Prince Blige was entitled "Jury Indicts the Meanest Blige in the Rape of a Pregnant Woman." He recalled that several stories had run regarding the different Blige brothers and the crimes they had committed.

The trial court denied Blige's motion; in its order doing so, the court stated that after hearing the evidence and after the individual voir dire of 62 prospective jurors: "the defendant has failed to prove that the pretrial publicity is so pervasive, saturating and inflammatory that he should be entitled to a presumption of prejudice. . . . Therefore, the test for a change of venue is whether prospective jurors have formed fixed opinions as to the defendant's guilt or innocence based upon reports in the media. *Baker v. State*, 245 Ga. 657 [266 SE2d 477] (1980); *Berryhill v. State*, 249 Ga. 442 [291 SE2d 685] (1982). Of the 62 prospective jurors who were individually questioned, 16 were disqualified. Of those disqualified, one was disqualified due to health reasons and one was disqualified by virtue of her employment with the district attorney's office. Thus, only 14, or 22.58% were disqualified due to fixed opinions of defendant's guilt or innocence. This is consistent with a lack of prejudicial publicity. See *Butler v. State*, 231 Ga. 276 [201 SE2d 448] (1973) (36% dismissal rate corroborates an absence of prejudicial publicity); *Coleman v. State*, 237 Ga. 84 [226 SE2d 911] (1976) (49%); *Collier v. State*, 244 Ga. 553 [261 SE2d 364] (1979) (20%) [overruled in part on different grounds in *Thompson v. State*, 263 Ga. 23 [426 SE2d 895] (1993)]; *Blanks v. State*, 254 Ga. 420 [330 SE2d 575] (1985) (27%); *Chancey v. State*, 256 Ga. 415 [349 SE2d 717] (1986) (42.3%)."

Here, Blige claims that the trial court erred in denying his motion in that he could not receive a fair trial in Chatham County because of his family name. He argues that the jury was not impartial and that his Sixth Amendment rights were violated.

"The inquiry into a request for a change of venue is two pronged. First, the court must consider whether the atmosphere in the community is so inherently prejudicial due to pretrial publicity that the defendant cannot receive a fair trial . . . due to the prejudice of individual jurors." *Lemley v. State*, 258 Ga. 554, 556 (372 SE2d 421) (1988). The trial court did not err in finding that there was no inherently prejudicial situation in this matter. "There [was] no evidence of a total inundation of the judicial process by the media at this trial." (Ci-

tations and punctuation omitted.) *Chancey*, supra at 430.

The second prong of the two-part test is to consider evidence of actual prejudice on jurors on voir dire. Blige failed to include a transcript of the voir dire in the record and thus failed to meet his burden of showing error. See *McKenzie v. State*, 188 Ga. App. 571, 572-573 (2) (373 SE2d 830) (1988). Moreover, assuming arguendo that this contention was not waived, we find no error in the trial court's conclusion that no actual prejudice existed so as to mandate a change of venue. See *Chancey*, supra. We find no abuse of the trial court's discretion in this case. *Berryhill*, supra at 445.

2. In his second enumeration of error, Blige contends that the trial court erred in denying his motion in limine which sought to exclude evidence regarding deoxyribonucleic acid ("DNA") of semen samples taken from the victim which matched the profile of DNA in a sample of Blige's blood. Blige claims that the same procedure was used for calculating as in *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990), and that such conclusion was based on an unreliable data base. He claims that the expert witness here did not adhere to the statistical requirements outlined in *Caldwell*.

This argument is without merit. Prior to the jury hearing evidence regarding the probability statistics, Dr. Baird the director of forensic and paternity at Life Codes Corporation testified. He stated that no significant changes in the presentation of calculations had been made at Life Codes since *Caldwell*. He stated that the calculated frequency of occurrence of this DNA in the black population, assuming that the relevant population was in Hardy-Weinberg equilibrium,[1] was about one in eighty-one million. Dr. Baird testified that downsizing the numbers as in *Caldwell* — that is, not using any "population theory" — the probability of selecting an unrelated individual of the population from the same race who had a matching genetic profile was one in eight million. He stated that in the white population the frequency of occurrence, assuming the Hardy-Weinberg equilibrium, was one in three trillion; with downsizing, the probability was one in one hundred and thirty million. As in *Caldwell*, in the instant case the trial court concluded that the State could use the more conservative figures, but was not permitted to use the figures which were based on the assumption that the population was in Hardy-Weinberg equilibrium. Compare *Greenway v. State*, 207 Ga. App. 511, 515 (4) (428 SE2d 415) (1993). We find no error in the trial court's denial of

---

[1] As explained in *Caldwell*, "[i]n 1908, Dr. Hardy and Dr. Weinberg formulated a binomial equation used to calculate the frequency of an allele [a fragment of DNA] in a population from sample population data. This equation is valid only if there is random mating in the population, if there is no inbreeding, if there is no mutation, and if the population is effectively infinite." Id. at 289, n. 6.

the motion in limine.

3. Finally, Blige claims the trial court erred by denying his motion in limine to exclude evidence of similar crimes which placed his character into issue. Blige filed a written motion which specifically moved to exclude evidence of his conviction for attempted rape; the State subsequently gave notice of its intent to introduce prior similar crimes. The trial court ruled that the evidence of Blige's guilty plea to the charges of attempted rape and burglary was admissible. In doing so, the trial court found that the similar transaction evidence was introduced for a proper purpose, that there was no improper motive of injecting the issue of Blige's character and that there was a sufficient connection or similarity between the crime for which Blige was being tried and the independent crime to which he pled guilty.

Here, Blige claims that the prejudicial effect outweighed any probative value, that the cases were dissimilar since the prior one involved a criminal attempt to commit rape and the instant case was a rape case, and, finally, that there was no evidence to show that he committed the independent act.

Blige's arguments are without merit. The State made the affirmative showings required under *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); see also *Carter v. State*, 205 Ga. App. 885 (424 SE2d 81) (1992); *Mozier v. State*, 207 Ga. App. 264 (427 SE2d 551) (1993). The identity of Blige in the prior crime, which was never in issue, was re-established through the in-court identification by the victim of the prior attack and through a certified copy of his prior conviction. There were numerous similarities between the crime charged and the independent crime. The fact that one case involved a charge of attempted rape and the instant matter involved a charge of rape does not alter our conclusion. See generally *Moore v. State*, 207 Ga. App. 897 (429 SE2d 340) (1993).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JANUARY 28, 1994.

*Willie T. Yancey, Jr.*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.