A94A2369. MORRILL v. THE STATE.
(454 SE2d 796)

JOHNSON, Judge.

Police officer Brett Morrill was indicted for participating in a crime ring, made up of law enforcement officers and others who committed burglaries and robberies in the metropolitan Atlanta area. The state jointly tried Morrill and two co-indictees, deputy sheriff William Moclaire and Troy Endres, before a jury in Fulton County. The jury returned a verdict finding Morrill guilty of three counts of burglary, one count of armed robbery, two counts of aggravated assault and one count of possession of a firearm during the commission of a crime. The jury also found Moclaire and Endres guilty of various offenses. The court entered judgments of conviction against all three defendants on the jury verdicts. The court merged Morrill's two aggravated assault convictions into his armed robbery conviction and sentenced him to serve a total of 25 years in prison. Moclaire and Endres jointly appealed from their convictions, which this court affirmed. See *Moclaire v. State*, 215 Ga. App. 360 (451 SE2d 68) (1994). Morrill filed this separate appeal.

1. Morrill challenges the sufficiency of the evidence supporting his convictions. "On appeal of a criminal conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." (Citations, punctuation and emphasis omitted.) *Gray v. State*, 213 Ga. App. 507, 509 (1) (445 SE2d 328) (1994). "[The] appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]" *Palmore v. State*, 213 Ga. App. 140, 141 (2) (444 SE2d 581) (1994). The evidence in the instant case, viewed in the light most favorable to the verdict, shows that on June 8, 1992, members of the crime ring broke into the Foxx Adult Entertainment Club to steal money. Officer Morrill, who was on duty, acted as a lookout for the ring members who entered the club and monitored his police radio for any calls concerning the burglary. Because the crime ring members were unable to open the club's safe, Morrill borrowed a hand truck from a nearby convenience store, which the ring members then used to remove the safe from the Foxx premises. Morrill later received approximately $325 as his share of the money found in the Foxx safe.

Two weeks after the Foxx break-in, crime ring members burglarized a Home Depot store. They were unable to open the store safe, but stole various other items. During the burglary, Morrill again was on duty and monitored his police radio in order to warn the ring members if any alarms went off at the store or police were called to the scene. Immediately after the burglary, Morrill met with the ring members to take an inventory of the items stolen.

A week later, the ring targeted the Home Depot for a second theft, planning to lure the Home Depot manager to the store so he could be forced to open the safe. The ring intentionally set off an alarm at the store. Morrill, who again was on duty, answered the alarm. He met the manager at the store to walk through the premises. After finding no one on the premises, Morrill left the manager alone in the store. Two crime ring members then rushed into the Home Depot. After one of the members fired a gun, the manager fell to the floor. The ring members held a gun to the manager's head, forced him to open the safe, tied him up and left the store with money from the safe. Morrill received approximately $6,000 for his participation in the second Home Depot burglary.

Having reviewed all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found Morrill guilty beyond a reasonable doubt of all the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lawson v. State*, 214 Ga. App. 464, 465 (1) (448 SE2d 14) (1994); *Edwards v. State*, 209 Ga. App. 304, 305 (1) (433 SE2d 619) (1993).

2. Morrill claims the court erred in overruling his motion to quash the indictment because he was denied his rights as a police

officer to be served with a copy of the proposed indictment at least 15 days before it was presented to the grand jury, to be present when the state introduced its evidence to the grand jury, and to make a statement to the grand jury without being cross-examined. "Peace officers are afforded these rights under OCGA §§ 17-7-52 and 45-11-4 if charged with a crime which is alleged to have occurred while in the performance of their official duties. In *Mize v. State*, 152 Ga. App. 190 (1) (262 SE2d 492) (1979), this court held that a police officer charged with participating in a burglary while in uniform and on duty was properly denied these protections, inasmuch as the performance of such official duties does not include the commission of burglaries." (Citation and punctuation omitted.) *Gober v. State*, 203 Ga. App. 5 (1) (416 SE2d 292) (1992). In the instant case, the state alleged Morrill committed the crimes charged while on duty. Because the performance of Morrill's official duties did not include the commission of the crimes charged, he was not entitled to the rights afforded by OCGA §§ 17-7-52 and 45-11-4. The court therefore properly refused to quash the indictment.

3. Morrill argues the court erred in denying his motion for a change of venue based on extensive pretrial publicity of the case. The trial court has discretion in determining whether to grant a motion for a change of venue and its determination will not be disturbed absent an abuse of that discretion. *Chancey v. State*, 256 Ga. 415, 430 (5) (349 SE2d 717) (1986). "In a motion for a change of venue, the [movant] must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]" *Grace v. State*, 210 Ga. App. 718, 720 (3) (437 SE2d 485) (1993). "Traditionally, a defendant seeking a change of venue on the basis that the setting of the trial is inherently prejudicial relies heavily if not primarily or exclusively on news media reports. . . . However, widespread or even adverse publicity is not in itself grounds for a change of venue. On appeal, the impact of media publicity is evaluated by various factors, such as the size of the community and the extent of media coverage (number of articles and their circulation); whether it is related to the discovery of the crime (e.g., facts regarding the victim) or to the apprehension or interrogation of the defendant (and whether any publicized confession was admitted at trial); the prominence and content of the reports (e.g., facts vs. speculation and emotionalism, and the accuracy and admission into evidence of those facts); and the time interval between the publicity and the trial." (Citations and punctuation omitted.) *Nobles v. State*, 201 Ga. App. 483, 489 (11) (411 SE2d 294) (1991). "[D]efendants sometimes also seek to show inherent prejudice has resulted from widespread community fear and bias." (Citations and punctuation omitted.) *Milan v. State*,

207 Ga. App. 206, 208 (2) (427 SE2d 573) (1993).

The current case was widely covered in Fulton County news reports. The media coverage cited by Morrill relates both to the discovery of the crimes and the apprehension of people involved in the offenses. The coverage cited is generally factual, not speculative or emotional. Contrary to Morrill's claims, the record of publicity before us does not show a "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion. . . . There is no evidence of a total inundation of the judicial process by the media at this trial." (Citations and punctuation omitted.) *Nobles,* supra. Because Morrill has not shown inherent prejudice as a result of pretrial publicity or community fear and bias, we conclude that the trial court did not abuse its discretion in refusing to change venue on this basis.

The court also did not abuse its discretion in determining the jury selection process showed no actual prejudice to a degree rendering a fair trial impossible. This determination involves a review of the voir dire examination of potential jurors. *Chancey,* supra at 429 (5). "[T]he proper test is whether the prospective juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (Citations and punctuation omitted.) Id. at 431 (5) (C). Here, 115 potential jurors were questioned in individual voir dire and 19 of them were excused because they had formed an opinion of guilt based on pretrial publicity. As to the remaining prospective jurors, Morrill has not shown that any of them were unable to lay aside their impressions and render a verdict based on evidence presented in court. Because the trial court did not abuse its discretion in finding no inherent or actual prejudice due to pretrial publicity, we cannot disturb the denial of Morrill's motion to change venue. See *Crawford v. State,* 257 Ga. 681, 683 (2) (362 SE2d 201) (1987); *Blige v. State,* 211 Ga. App. 771, 772-773 (1) (440 SE2d 521) (1994).

4. Morrill contends the court should have disqualified three jurors for cause on the ground that they were biased against him due to pretrial publicity. "[B]efore a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Further, the decision to strike a juror for cause lies within the sound discretion of the trial court." (Citations and punctuation omitted.) *Garland v. State,* 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). Here, the court did not abuse its discretion in refusing to excuse the three jurors because they all indicated they could set aside any opinions they had formed about the case due to publicity, and decide the case based on the evidence presented in court and the judge's instructions. See *Watts v. State,* 200 Ga. App. 54, 56 (3) (406

SE2d 562) (1991).

5. Morrill claims the court erred in refusing to exclude evidence seized from James Donald Kirkland's house pursuant to a null search warrant. See *State v. Kirkland*, 212 Ga. App. 672 (442 SE2d 491) (1994). "[A]n illegal search only violates the rights of those who have a legitimate expectation of privacy in the invaded place." (Citation and punctuation omitted.) *Sanders v. State*, 181 Ga. App. 117, 118 (1) (351 SE2d 666) (1986). "The Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously. And, an individual who claims he is aggrieved by an illegal search and seizure only through the introduction of evidence secured by a search of a third person's premises has not had any of his Fourth Amendment rights infringed." (Citation and punctuation omitted.) *Delgado v. State*, 192 Ga. App. 356, 357 (384 SE2d 680) (1989). Because Morrill had no legitimate claim to any expectation of privacy in Kirkland's house, he may not validly seek to exclude evidence illegally seized from that house, and the trial court did not err in denying Morrill's motion to suppress. See *Todd v. State*, 184 Ga. App. 750, 751-752 (2) (362 SE2d 400) (1987). Even if the court did err in admitting the evidence seized from Kirkland's house, the overwhelming evidence of Morrill's guilt renders the error harmless beyond a reasonable doubt. See *Randall v. State*, 194 Ga. App. 153, 154 (390 SE2d 74) (1990).

6. Morrill argues he was denied a fair trial because the state violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), by failing to disclose the results of a prosecution witness' polygraph examination and a police officer's report concerning the polygraph and statements made by the witness. Morrill's co-defendants, Moclaire and Endres, raised essentially this same argument in their appeal. For the reasons set forth in *Moclaire*, supra at 360-361 (1), we conclude Morrill was not denied a fair trial under *Brady*.

7. Morrill claims the court erred in failing to conduct an in camera inspection of the state's complete file. It is undisputed that the court inspected, pursuant to Morrill's request, a copy of the prosecutor's seven-notebook file. Morrill contends this inspection was insufficient because the court refused also to inspect the voluminous files of a multi-jurisdictional law enforcement task force formed to investigate the crime ring. "[C]ounsel for the State can make available only such evidence as it has in its file, or of which it has knowledge, and is under no requirement to conduct an investigation on behalf of a defendant. Nor is an accused, as a matter of right, entitled to receive copies of police reports and investigations made in the course of preparation of a case against a suspect. Further, there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. Cer-

tainly, a prosecutor has no obligation to contact local law enforcement and judicial agencies on behalf of the defense to uncover any information which might be remotely relevant. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. *Brady* cannot be read as requiring that as a matter of constitutional law everything must be disclosed which might influence a jury." (Citations, punctuation and emphasis omitted.) *Massengale v. State*, 189 Ga. App. 877, 881 (4) (377 SE2d 882) (1989). Contrary to Morrill's contention, he was not entitled to discover, or have the court review, all of the police investigatory work done on the case. The court therefore did not err in inspecting only the prosecutor's file and in refusing to inspect the police investigation files. See *Broom v. State*, 209 Ga. App. 42, 43 (432 SE2d 823) (1993).

8. Morrill contends the court improperly denied him the right to cross-examine a state witness about criminal charges pending against the witness in Cobb County. Moclaire and Endres also asserted this error on appeal. As we stated in the opinion addressing their appeal: "The federal constitution guarantees the defendant in a criminal trial the specific right to cross-examine a key state witness about criminal charges pending against the witness. Assuming, without deciding, that the witness in the instant case was a key prosecution witness and that the court erred in refusing to allow the cross-examination, the error was harmless beyond a reasonable doubt because the strength of the state's case was overwhelming and the witness' testimony [was largely corroborative of other evidence of Morrill's participation in the crimes charged]." (Citations omitted.) *Moclaire*, supra at 362 (3).

9. Morrill complains the court erred in allowing the state to publish two photographs to the jury. The state tendered the photographs for admission into evidence after a witness testified that some of the objects depicted in the photographs were used in crimes in which Morrill was implicated. Morrill objected to the photographs in their entirety. The court overruled this broad objection, finding the photographs were admissible. This ruling was not erroneous. "Upon the tender of demonstrative or documentary evidence, part of which is admissible and part inadmissible, and the objection is to the evidence as a whole, it is not error to admit it all. Accordingly, even assuming that certain items in the photographs may not have been shown to be directly relevant to appellant's instant prosecution, it was not error to fail to sustain the objection to the admission of the photographs in their entirety." (Citations and punctuation omitted.) *Kirkland v. State*, 206 Ga. App. 27, 29 (6) (424 SE2d 638) (1992). Because the photographs were properly admitted into evidence, the court did not err in allowing the state to publish them to the jury.

Later in the trial, however, the court ruled that all of the items depicted in one of the photographs, and many of the items depicted

in the other photograph, were inadmissible. Based on these rulings, Morrill again objected to admitting the two photographs into evidence. The court sustained this objection and reversed its earlier ruling by holding that the two photographs were inadmissible, and the photographs were not sent out with the jury for consideration during deliberations. If Morrill was not satisfied that this exclusion of the photographs from evidence was sufficient, he should have immediately moved for a mistrial or asked the court to give the jury a curative instruction to disregard the prior publication of the photographs. Morrill does not claim he moved for a mistrial or requested a jury instruction, and our review of the transcript does not reveal that such a timely motion or request was made. "When an appellant could have tendered a timely motion for mistrial or requested additional limiting or curative instruction but declined to do so, we generally will not grant more appellate relief than that actually prayed for at trial. [Cits.]" (Punctuation omitted.) *Smith v. State*, 210 Ga. App. 451 (2) (436 SE2d 562) (1993). "Further, applying the high probability test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869), we find that even if error had occurred it would have been harmless." *Watkins v. State*, 207 Ga. App. 766, 772 (4) (430 SE2d 105) (1993). Morrill's complaint that the photographs were improperly shown to the jury is without merit.

10. Morrill asserts the court erred in denying his motion to sever his trial from that of Moclaire and Endres. "The grant or denial of a motion to sever is within the discretion of the trial court; and absent an abuse of discretion, the denial of a motion to sever will not be reversed. The trial court in exercising its discretion is to consider three elements: Whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses." (Citations and punctuation omitted.) *Marlow v. State*, 207 Ga. App. 269, 271 (1) (427 SE2d 600) (1993). Here, the trial court did not abuse its discretion in finding that none of these elements mandated that Morrill's trial be severed from that of Moclaire and Endres. At most, Morrill merely raised the possibility that he might have a better chance of acquittal in a separate trial. However, "the burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Citations and punctuation omitted.) *Sims v. State*, 186 Ga. App. 74, 75 (4) (366 SE2d 406) (1988). Because Morrill has not made a clear showing of prejudice and a denial of due process, he has not carried his burden. The court committed no error in denying Morrill's motion to sever.

11. Morrill challenges five similar transactions the court admitted into evidence. "Before any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility. The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. After the 31.3 (B) hearing, and before any evidence concerning a particular independent offense or act may be introduced, the trial court must make a determination that each of these three showings has been satisfactorily made by the state as to that particular independent offense or act." (Citations and punctuation omitted.) *Carter v. State*, 205 Ga. App. 885, 886 (424 SE2d 81) (1992). In the present case, the court held a 31.3 (B) hearing and determined the state made the three necessary showings as to each independent act admitted. Contrary to Morrill's arguments, the court's determinations were not erroneous.

Morrill argues the state failed to prove that the similar attempted burglaries of an A & P grocery store, a Wal-Mart department store and a Pep Boys automotive store actually occurred. This argument is without merit because the state presented testimony from crime ring members describing how the ring attempted to commit the burglaries. Morrill's additional claim that he was not sufficiently identified as a participant in the robbery of a movie theater is without merit because crime ring members testified that he took part in the robbery. There is no requirement that the similar transactions be proved beyond a reasonable doubt. *Allison v. State*, 213 Ga. App. 195, 197 (2) (444 SE2d 347) (1994). The state in this case adequately proved that the three attempted burglaries occurred and that Morrill participated in the movie theater robbery.

Morrill further argues the movie theater robbery, the attempted Wal-Mart burglary and the theft of a U-Haul truck were not sufficiently similar to the offenses for which he was on trial. "Evidence of similar crimes is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct outweighs its prejudicial impact. There is no requirement that a previous offense be absolutely identical to the one being prosecuted so as to make it admissible." (Citations, punctuation and emphasis omitted.) Id. at 196

(1). Here, although the similar transactions complained of are not identical to the crimes prosecuted, they were committed by the same group, in the same general area and in the same method as the crimes prosecuted. The similar acts were therefore admissible to show identity, motive, plan and course of conduct. The court did not err in admitting the similar transaction evidence. See *Gearin v. State*, 208 Ga. App. 878, 882 (3) (432 SE2d 818) (1993).

*Judgment affirmed. Beasley, C. J., and Andrews, J., concur.*

DECIDED FEBRUARY 15, 1995 —
RECONSIDERATION DENIED MARCH 2, 1995 — 

*Joseph J. Drolet,* for appellant.
*Lewis R. Slaton, District Attorney, Shawn E. Lagrua, Leonora Grant, Assistant District Attorneys,* for appellee.