## A99A1432. DICKERSON v. THE STATE.

(526 SE2d 443)

BARNES, Judge.

Following a jury trial, Rufus Dickerson was convicted of rape and sentenced to 18 years. He appeals, alleging the trial court erred in denying his motions to suppress DNA evidence, to compel a witness's criminal history, for mistrial, and for recusal. For the reasons that follow, we affirm.

Construed to support the verdict, the evidence presented at trial showed that Anthony Penix hosted a party one evening to watch the Holyfield-Tyson fight. Approximately 15 people attended the party, including Rufus Dickerson. Around midnight, Penix's fiancée, A. H., returned home from work. The party ended around 1:30 or 2:00 a.m., and Penix invited Dickerson to stay on the couch since he had been drinking. A. H. testified that around 2:25 a.m., she went to sleep in her son's bedroom, leaving Penix and Dickerson on the couches in the den.

A. H. further testified that she awoke to find Dickerson on top of her with his penis in her vagina. She asked "what the hell he was doing" and punched him in the face, but "his motions got continually faster." After A. H. screamed for her fiancé, Dickerson slid off the bed, pulled up his pants, and ran out the door. Penix, who was awakened by A. H.'s screams, yelled after Dickerson, who was getting into his car, but Dickerson did not stop.

A. H. called the police, and after they arrived she gave a description of Dickerson and his vehicle. A police officer picked up Dickerson and brought him back to the house, where A. H. identified him. A. H. went to the Rape Crisis Center, where nurses performed a physical examination that uncovered no signs of physical or sexual trauma.

The police took A. H.'s bed sheets for testing. After receiving a lab report verifying that the sheets contained DNA, the investigating officer secured a search warrant to obtain Dickerson's blood for comparison DNA testing. A DNA analyst at the State Crime Lab testified that the DNA in Dickerson's blood matched DNA in the sperm found on the bed sheets. The DNA section manager testified that the odds the sperm came from someone other than Dickerson were one in one hundred billion for the African-American population.

1. In his first assertion of error, Dickerson contends the trial court erred in not suppressing the DNA evidence because the search warrant affidavit did not contain sufficient probable cause to show Dickerson had committed the rape, did not state that relevant material evidence would be found in the search, and did not state that the method used to secure the evidence was safe and reliable. He further contends that the magistrate violated his right to counsel by issuing the search warrant ex parte.

"On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgments made. The trial court's findings must be adopted unless determined to be clearly erroneous." (Punctuation omitted.) *Culver v. State*, 230 Ga. App. 224, 227 (1) (496 SE2d 292) (1998), citing *Bickley v. State*, 227 Ga. App. 413, 414 (1) (a) (489 SE2d 167) (1997).

In determining whether sufficient probable cause existed for a magistrate to issue a search warrant, we apply the "totality of the circumstances" analysis set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). Quoting *Gates*, the Supreme Court of Georgia held:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Punctuation omitted.) *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). "Before a warrant may issue, the issuing magistrate must have sufficient reasons to believe that a crime was committed, that the items sought are connected with the crime, and that the items sought will be found in the place to be searched." (Citations and punctuation omitted.) *State v. Toney*, 215 Ga. App. 64, 65 (449 SE2d 892) (1994).

Here, the investigating officer presented to the magistrate a search warrant affidavit that included A. H.'s description of the alleged rape and of her attacker and statements by A. H. and Penix identifying Dickerson as the attacker. The affidavit specifically stated that "the person of Rufus Joe Dickerson, Jr." was to be searched for "blood as evidence in the crime of rape." Thus, contrary to Dickerson's argument, the facts presented in the officer's affidavit were sufficient to establish probable cause that Dickerson committed the crime and also specified the material evidence to be collected.

Finally, Dickerson argues the trial court erred in not suppressing the DNA evidence because he was denied his right to counsel when his blood was drawn. He argues that, because the search warrant was issued post-indictment, it constituted a critical stage in his criminal prosecution that triggered his right to counsel. However, we have held that "neither the presence of appellant's counsel nor appellant's consent is required for the execution of a warrant calling

for the seizure of hair, blood or other body fluids." *Johnson v. State*, 179 Ga. App. 467, 468 (4) (346 SE2d 903) (1986). Thus, the trial court did not err in denying Dickerson's motion to suppress.

2. Dickerson also contends the trial court erred by denying his motion to compel and thus allowing into evidence the unimpeached testimony of a State witness. Dickerson maintains that under OCGA § 17-16-8 (a), the State must provide to defense counsel the birth dates of all its witnesses. Dickerson argues that, because he did not receive the birth date of a witness until shortly before trial, he could not retrieve her criminal records until after the trial ended. Those records revealed the witness was previously convicted of a crime of moral turpitude, and therefore her testimony would have been impeachable. The prosecuting attorney stated that he gave Dickerson all the witness information the State had in its possession. After much consideration, the trial court held the State could not be compelled to produce information not within its possession and denied Dickerson's motion to compel.

Because Dickerson did not request a continuance at that point, he has waived his right to argue that the trial court erred in allowing the State's witness to testify. See *Day v. State*, 188 Ga. App. 648, 650-651 (8) (374 SE2d 87) (1988). But for that waiver, we would reverse this conviction, as discussed by the special concurrence, based on the State's failure to meet its mandatory discovery obligations with the resulting harm to the defendant.

3. Dickerson further contends that the trial court erred by denying the motion for mistrial he made after the judge commented on a witness's statement. During Dickerson's cross-examination of a State witness, the State objected to the hypothetical posed, on the ground that the assumptions given were not in evidence. In response to the State's objection, the trial judge said:

> The jury heard the testimony, and the jury recognized whatever the testimony was. I don't think there is any testimony before this court that there were ten ounces of Cognac consumed, I don't — or alcohol. I don't think that's what he said. I think he said probably a ten ounce glass. . . . As mixed drinks, but he thought. . . .

Dickerson objected and moved for a mistrial under OCGA § 17-8-57, which provides: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." The trial court denied the motion, explaining that its statement did "not amount to improper judicial comment which goes to the guilt or innocence of the accused. It merely represented the

Court's recollection of the evidence with regard to a hypothetical."

The trial court then offered to give a curative instruction, which Dickerson declined. At the end of trial, the court charged the jury that they were the sole determiners of the evidence, and that no ruling or comment by the court during the trial was intended "to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant."

"Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." (Punctuation omitted.) *Johnson v. State*, 234 Ga. App. 58, 59 (1) (506 SE2d 212) (1998), citing *McGinnis v. State*, 258 Ga. 673, 675 (4) (372 SE2d 804) (1988). Here, the trial judge properly ruled on the State's objection to a hypothetical on the ground that the assumptions given were not in evidence. Even assuming the trial judge's comments were opinions as to what had been proven in the case, OCGA § 17-8-57 does not extend to colloquies between the judge and counsel regarding the admissibility of evidence. *Rowe v. State*, 266 Ga. 136, 139 (2) (464 SE2d 811) (1996); *Johnson v. State*, supra, 234 Ga. App. at 59. We find no error in the trial court's denial of Dickerson's motion for mistrial.

4. In his fourth assertion of error, Dickerson argues that the trial court erred in denying his motion for disqualification and recusal of the trial judge, followed by his motion for mistrial. Before the director of counseling services at the Gwinnett Sexual Assault Center testified for the State, the trial judge excused the jury and informed counsel he had made charitable contributions to the Center, including a $500 donation for their new building. The trial judge said he had never been to the building nor did he know anyone working at the Center. In response, Dickerson moved to recuse the judge, asserting that the contributions made the judge's impartiality questionable. The trial court denied the motion.

Under former Rule 25.2 (current Rule 25.3) of the Uniform Rules for the Superior Courts,

> [w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, he shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear

the motion to recuse.

(Punctuation and emphasis omitted.) *Birt v. State*, 256 Ga. 483, 484 (1) (350 SE2d 241) (1986).

Here, the trial court considered the timeliness and legal sufficiency of the affidavit accompanying the motion to recuse and held that the facts alleged did not show bias or prejudice toward an involved party. The Center employed two of the witnesses and was not a party directly involved in the criminal proceedings, and the judge voluntarily told the parties of his charitable contributions.

USCR 25.2 states that "[a]llegations consisting of bare conclusions and opinions shall not be legally sufficient to support the motion or warrant further proceedings." The conclusory allegations in Dickerson's affidavit, assuming them to be true, failed to show the alleged bias was "of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudice." (Punctuation omitted.) *Birt v. State*, supra, 256 Ga. at 486. Accordingly, we find no error in the trial court's determination that no further hearing was necessary on Dickerson's recusal motion.

5. Finally, Dickerson argues the trial judge erred in denying a second motion to recuse, filed after the judge commented publicly on the previous recusal motion. A newspaper article published during the trial began: "Superior Court Judge James Oxendine rejected a defense motion to recuse himself from a rape trial Monday, saying donations he made to the Gwinnett Rape Crisis Center do not affect his impartiality." The article quoted the judge as follows:

Oxendine said there was no basis for the accusation. "You've got to have more connection than that, and I don't know a single person who works for the rape crisis center," he said in an interview. "I simply gave money when they were out trying to build a new building. I have absolutely no contact with them. . . . I've always felt like one ought to try to support your community, and they're not a political organization or anything."

(Ellipsis in original.)

Dickerson asserts these comments reflected adversely on the judge's impartiality. As in Division 4, the trial court's comment concerning the first motion to recuse demonstrated neither bias nor prejudice that would influence him and impede or prevent impartiality in the case. *Birt v. State*, supra, 256 Ga. at 486. We find no error in the trial court's denial of the second motion to recuse.

*Judgment affirmed. Ellington, J., concurs. Blackburn, P. J., concurs fully and specially.*

BLACKBURN, Presiding Judge, concurring fully and specially.

I concur fully with the judgment and analysis of the majority. I write separately to clarify the procedural requirements of the criminal discovery statute. The State has not shown "good cause" for its failure to comply with OCGA § 17-16-8 (a), the criminal discovery statute, simply because it did not "have the birth dates in its files." This excuse cannot be accepted as "good cause" under the statute. If compliance can be so easily avoided, the discovery statute is rendered meaningless.

OCGA § 17-16-8 (a), applying equally to the prosecution and defense, mandates the exchange of minimal, but critical information: "The prosecuting attorney . . . and the defendant's attorney . . . *shall furnish* to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses." (Emphasis supplied.) Both the prosecution and the defense are statutorily required to provide these four pieces of information about their respective witnesses. Compliance is mandatory unless "for good cause the judge allows an exception." Id.

The purpose of this statute, as with the other statutes governing discovery in a criminal case, is to ensure that the criminal defendant receives a fair trial. "[T]he State and a criminal defendant [should] begin on a level playing field at the outset of trial." *Hill v. State*, 232 Ga. App. 561, 564 (502 SE2d 505) (1998) (Blackburn, J., concurring specially). Specifically, this statute gives both sides the opportunity to interview witnesses in preparation for trial.

> A primary purpose of requiring disclosure of evidence and witnesses well in advance of trial is to allow counsel time to reflect with deliberation upon such evidence, to consider how it could best be presented at trial and how it affects her overall strategy, and to seek to develop other evidence to corroborate or impeach the discovered evidence.

*Baker v. State*, 238 Ga. App. 285, 287 (518 SE2d 455) (1999). A witness' birth date is used to develop evidence to impeach the witness — it is necessary to research any criminal record.

The State did not provide the birth dates because the dates were not in its file. Dickerson filed a motion to compel the State to produce either its witnesses' criminal histories or their birth dates. The trial court denied the motion to compel, holding that, without evidence to the contrary, it could not compel the State to produce information which the State did not have.[1] Dickerson's ability to obtain the crimi-

---

[1] I note that in this case, even though defense counsel was given the witness' phone

nal history of the subject witness who had a conviction for a crime involving moral turpitude was hampered by the State's failure to provide the required information, and defendant was unable to impeach said witness.

As the statute obligates the State to give the information to the defendant, it has a duty to attempt to obtain the information about its witnesses. The State cannot fulfill its obligation by simply looking in its file. The statute clearly requires the parties to provide four pieces of information, and only in the rarest of circumstances should the information truly be unavailable.

The State asserted that it did not have to go looking for the information. I disagree. Although the State complains that getting the information is burdensome, this information is routinely obtained by the State, and the discovery statute places the same burden on the defense. That burden is the cost to the parties of receiving the benefits of the discovery process. The legislature intended for both sides to comply with the law, and the statute contemplates a reasonable effort by both sides to meet their statutory obligations.

The information is reasonably available to the State by communicating with its witnesses, the police department, the investigators in the district attorney's office, or checking available records, including computer searches. The State should not be allowed to avoid compliance with the law by producing only the information which it elects to include in its file. See OCGA §§ 17-16-1 (1); 17-16-4; *Marshall v. State*, 230 Ga. App. 116, 118 (2) (495 SE2d 585) (1998) (the prosecutor's ignorance of discoverable information does not justify noncompliance with the discovery statute); *Baker*, supra. To hold otherwise, would result in an expedient means for the State to avoid compliance — merely not including the information in their file, not asking their witness, the police, or investigators for such information, or not checking the computer or criminal files. This is impermissible and circumvents the very purpose of the statute. Nowhere does the State contend that the statutorily required information was not available through one of the methods outlined above or indeed that they had even attempted to so obtain the information.

Thus, to establish good cause for failing to comply with OCGA § 17-16-8 (a), the State has the burden of showing what reasonable efforts it has made and why such efforts failed to be fruitful as to those statutorily required items: name, location, date of birth and phone number of the witness. It is not enough to say it is not in "our" file, when it may very well be in the police or investigative file. The

number, he was thwarted in his efforts to get the birth date because the witness chose not to speak with him until the Friday before trial.

State has an absolute duty to provide such information absent a showing of good cause to excuse it of this duty.

Such a showing necessarily entails outlining the efforts made, but which ultimately failed, to obtain the information. Who originally communicated with or interviewed the witness? Why was the information not obtained then as a standard part of witness information? Who, including police or other investigators, has information on the witness? How does the State presently communicate with its witness? Does the State have the ability to check criminal records on its witnesses? Did it do so in this instance? If not, why not? Did the State check the criminal records on any of defendant's witnesses? What effort would it, in fact, take to obtain the required information? These questions are not exhaustive but are intended to demonstrate the type of review the court must conduct in its inquiry. The court must satisfy itself that the State's efforts rise to the level reflected in these inquiries. The announced results of these inquiries must be credible and reasonable before the State can be excused of its obligation to provide the required information.

*Morrill v. State,* 216 Ga. App. 468, 472 (7) (454 SE2d 796) (1995), cited by the State, did not involve the statutorily required information herein involved and does not require a different result. In *Morrill,* the defendant claimed entitlement to all of the police investigatory files. There we simply held that

> there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. Certainly, a prosecutor has no obligation to contact local law enforcement and judicial agencies on behalf of the defense to uncover any information which might be remotely relevant.

(Punctuation omitted.) Id. Unlike the information requested in *Morrill,* here the statute requires that specific information be provided. Because the statute requires that specific data be provided, the State should either routinely obtain the information in anticipation of having to provide it or obtain it upon request. Moreover, no unique, detailed, time-consuming investigation is demanded of the State for the benefit of the defendant. The legislature clearly intended that parties, including the State, expend that level of effort which the production of the information that the statute demands be produced might reasonably require.

In *Baker,* supra, we held that,

> [w]hen wrongfully withheld evidence is disclosed for the first time at the start of the trial, the defendant may be pre-

sumed to have been prejudiced, as his attorney has not had the opportunity to reflect upon such evidence and to determine what other investigation may be required as a result of its use and how it impacts the existing trial strategy and the subpoena and call of witnesses.

Id. at 287. Consequently, in *Baker*, the State's failure to comply with the discovery statute resulted in the reversal of Baker's conviction. In this case, the defendant, through his own efforts, was able to obtain the witness' date of birth but did not have time to obtain the criminal history with which he could have impeached the witness.

Because Dickerson did not request a continuance at that point, he cannot now complain that he did not have time to obtain the criminal history, as the trial court might have given him the time upon request. He has waived his right to complain under these circumstances. But for this waiver, I would reverse this case based on the State's failure to meet its mandatory discovery obligations, with the resulting harm to the defendant. However unjust this result might appear when comparing the State's failure to that of the defendant, we are constrained to follow the holdings of this Court and those of the Supreme Court of Georgia which have consistently required defendants to seek continuances when confronted with potential error which a continuance would avoid. See *Jenkins v. State*, 235 Ga. App. 547, 549 (3) (a) (510 SE2d 87) (1998) (failure to move for continuance precludes defendant from asserting his counsel was not afforded ample opportunity to investigate); *Watts v. State*, 265 Ga. 888 (2) (463 SE2d 696) (1995) (failure to move for a continuance precluded consideration of error).

For this reason alone, I would affirm rather than reverse in this case.

DECIDED DECEMBER 3, 1999 —
RECONSIDERATIONS DENIED DECEMBER 17, 1999 —

*Chandler & Britt, Walter M. Britt, Deborah F. Weiss*, for appellant.

*Daniel J. Porter, District Attorney, Donald P. Geary, Cari K. Johanson, Assistant District Attorneys*, for appellee.