A04A0897. BROWN v. THE STATE.
(605 SE2d 885)

PHIPPS, Judge.

Carmil Brown was convicted of criminal trespass and public indecency. On appeal, he contends that the trial court erred in denying his motion to suppress evidence and in requiring him, as a condition of his sentence for public indecency, to register as a sexual offender. We affirm.

At the June 2003 trial, the state's evidence showed that between 6:00 and 6:30 one morning in May 1999, R. J. awakened and saw a man outside her bedroom window. The sheet that had been hanging at the window the night before was on the floor, and the man was prying open the window. R. J., age 14 at trial, testified that the man "put his hand on his thing and white stuff came out."

A police officer who arrived at the scene at about 6:45 a.m. talked to R. J. The officer testified, "[R. J.] told me she observed the subject in her window reaching for her leg, and he had his penis in his hand with a white liquid substance coming out of the tip of the penis." The

---

[12] See *Denson v. State*, 240 Ga. App. 207, 208 (2) (523 SE2d 62) (1999).
[13] See *Waters*, supra; *Denson*, supra.

officer discovered a white liquid on the windowsill and on top of the air-conditioning unit outside the window. The liquid from the unit was collected by the police, taken to the Georgia Bureau of Investigation (GBI) crime lab, and determined to be semen. A forensic biologist employed by the lab testified that the deoxyribonucleic acid (DNA) profile from the semen matched the DNA profile of Brown's blood, a sample of which had been drawn pursuant to a search warrant.

Brown testified and admitted that, around the time of the incident, he would sometimes engage in sex outdoors, behind the apartment where R. J. was living. He denied, however, that he had exposed himself to a child and that he had tried to break into an apartment.

1. Brown contends that the trial court erred in denying the motion to suppress his blood sample, arguing that no probable cause existed to authorize issuance of the search warrant. Specifically, Brown claims that the state failed to present evidence that the requirements and procedures of OCGA §§ 24-4-60 through 24-4-65 were followed.

Like many other states, Georgia has created a data bank containing DNA profiles of certain convicted offenders.[1] Code sections 24-4-60 through 24-4-65 set forth requirements and procedures for obtaining, storing, maintaining, and analyzing the DNA profiles. Law enforcement officers may use the data bank in furtherance of an official investigation of any criminal offense.[2] In this case, in connection with an unrelated matter, Brown's DNA profile had been stored in that data bank. Subsequently, his stored profile was found to match the DNA profile of the semen collected at the crime scene. Based on that match, police arrested Brown and obtained the search warrant.

According to Brown's motion to suppress,

> An Affidavit was attached to the Application for the search warrant, which indicated that a "possible match" had been obtained by the GBI through the use of the Combined DNA Index System, "CODIS" in September 2001. . . . The "possible match" formed the primary basis for the issuance of the search warrant for evidence.

At the suppression hearing, defense counsel outlined the sequence of events that had led to application for the search warrant and stated

---

[1] *Bickley v. State*, 227 Ga. App. 413, 415 (1) (b), n. 1 (489 SE2d 167) (1997).

[2] OCGA § 24-4-63 (a).

that the search warrant had been "based upon an affidavit that was supplied by the detective. That affidavit indicated that this CODIS hit was the probable cause to secure the blood . . . samples from Mr. Brown."

On appeal, Brown claims that, because the state failed to present evidence that the requirements and procedures set forth in Code sections 24-4-60 through 24-4-65 were followed, it did not meet its burden of establishing the probable cause necessary for the issuance of the search warrant. He cites OCGA § 17-5-30 (b), which provides, "The judge shall receive evidence out of the presence of the jury on any issue of fact necessary to determine the [suppression] motion; and the burden of proving that the search and seizure were lawful shall be on the state."

"Before a warrant may issue, the issuing magistrate must have sufficient reasons to believe that a crime was committed, that the items sought are connected with the crime, and that the items sought will be found in the place to be searched."[3] In determining whether to issue a search warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.[4]

It is uncontested that the magistrate was presented with an affidavit stating that Brown's stored DNA profile matched the DNA profile of the semen collected at the crime scene. That match established probable cause sufficient to authorize issuance of the search warrant.[5] Brown provides no authority that mandates the state to further prove that the requirements and procedures set forth in the cited Code sections were followed, and we find none. Although he cites OCGA § 17-5-30 (b), he has not shown that the state failed to present

---

[3] (Citation and punctuation omitted.) *Dickerson v. State*, 241 Ga. App. 593, 594 (1) (526 SE2d 443) (1999), aff'd on other grounds, *State v. Dickerson*, 273 Ga. 408 (542 SE2d 487) (2001).

[4] Id., citing *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).

[5] See *Dickerson*, supra.

evidence on any issue of "fact necessary to determine the [suppression] motion."[6]

Brown further complains on appeal that the state did not introduce the affidavit into evidence at the suppression hearing. But the record reveals that Brown's counsel conceded that the affidavit stated that Brown's DNA profile stored in the CODIS data bank matched the DNA profile of the semen. The failure of the state to present the affidavit at the hearing was not an issue below and therefore cannot serve as a basis for reversal on appeal.[7]

Consequently, Brown's claim that the state failed to meet its burden of proof at the suppression hearing is without merit.

2. Brown contends that the trial court erred in requiring him to register as a sexual offender pursuant to OCGA § 42-1-12. Under that Code section, a person who is convicted of, among other things, certain "criminal offense[s] against a victim who is a minor" shall register as prescribed therein.[8] Relying on *State v. Chrisopoulos*,[9] Brown argues that OCGA § 42-1-12 does not apply to his conviction of public indecency because the offense of public indecency has no victim.

In *Chrisopoulos*, the accused allegedly had committed a single lewd act in the presence of two minors and was thereafter charged with two separate counts of public indecency. Each count alleged that the accused had committed a single lewd act in the presence of one of the minors. This court determined that the trial court acted properly by compelling the state to make an election between the two counts and then dismiss the other count. We explained that the crime of public indecency was sufficiently alleged without naming the two minors who had actually observed the alleged lewd act committed in a public place. Brown's argument that *Chrisopoulos* stands for the proposition that the crime of public indecency has no victim is based on this further explanation of our determination:

> The two minors are not the victims of [the] alleged crime, but are merely the witnesses through whom the State is prepared to prove [the accused's] guilt of an affront to public decency. Accordingly, the names of the two minors who merely witnessed the alleged offense are in no way necessary "to meet the proof" of [his] guilt, but constitute merely

---

[6] OCGA § 17-5-30 (b).

[7] See *Villegas v. State*, 253 Ga. App. 266, 267 (1) (558 SE2d 808) (2002) (scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching or shifting argument).

[8] OCGA § 42-1-12 (b) (1) (A) (i).

[9] 198 Ga. App. 876 (403 SE2d 460) (1991).

superfluous allegations of the State's evidence against [the accused]. "It is not necessary that an accusation or an indictment allege evidentiary matters. (Cit.)"[10]

*Chrisopoulos* concerned only the sufficiency of the indictment. It did not address whether a person convicted of committing public indecency in the presence of a minor could be required to register pursuant to OCGA § 42-1-12. To the extent that the cited language in *Chrisopoulos* suggests that the offense of public indecency is a victimless crime and that, therefore, a perpetrator thereof may not be required to register under OCGA § 42-1-12, it is hereby disapproved. Brown's reliance on that case is unavailing.

Furthermore, OCGA § 42-1-12 defines "criminal offense against a victim who is a minor." With respect to convictions occurring after June 30, 2001, that term includes any criminal offense under Title 16 that consists of "[c]riminal sexual conduct toward a minor."[11] Brown was convicted of the crime of public indecency, proscribed by OCGA § 16-6-8 (a). A person may commit that crime by performing several acts, including "[a] lewd exposure of the sexual organs"[12] and "[a] lewd appearance in a state of partial or complete nudity."[13] The evidence in this case authorized the trial court to determine that Brown's act of public indecency, in the presence of and witnessed by a minor, fell within the purview of OCGA § 42-1-12. Therefore, the trial court did not err in requiring Brown to register pursuant to that Code section.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., and Eldridge, Barnes, Miller, Ellington, Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 26, 2004 — 

*David T. Wooten*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[10] (Citations omitted.) Id. at 877.
[11] OCGA § 42-1-12 (a) (4) (B) (iii).
[12] OCGA § 16-6-8 (a) (2).
[13] OCGA § 16-6-8 (a) (3).