A09A1185. CHERRY v. THE STATE.
(682 SE2d 150)

BLACKBURN, Presiding Judge.

Following a jury trial, Takelia Cherry was convicted of a single count of second degree arson.[1] She now appeals from the denial of her motion for a new trial, asserting that: (1) the trial court erred in admitting similar transaction evidence offered by the State; and (2) the evidence was insufficient to sustain her conviction. We disagree and affirm.

Viewed in the light most favorable to the verdict, *Drammeh v. State*,[2] the evidence shows that on August 15, 2006, Cherry saw her ex-boyfriend, Demarious Freeman, driving a car that belonged to his current girlfriend, April Jarrell.[3] Approximately an hour and a half later, Freeman returned to the home he shared with Jarrell and

---

[8] See id at 528.
[9] Id. at 533 (4).
[10] Id.
[11] Id. at 534 (5); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[1] OCGA § 16-7-61 (a).
[2] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).
[3] Cherry and Freeman had broken up several months before the incident at issue, after

discovered that the tires on his own vehicle had been slashed.

Early that evening, Freeman encountered Cherry's brother at the home of a mutual friend, and the two men got into a physical altercation after Freeman accused Cherry of flattening his tires. Cherry's brother left, and some time later, Freeman called Jarrell and asked her to pick him up. Jarrell did so and, as she was driving Freeman back to their residence, they passed Cherry, who was driving a red car. Cherry turned her car around and began following the couple, pulling her car up next to theirs several times, cursing at them, screaming that she was going to "get" each of them, and making at least one attempt to force Jarrell's car off the road.

During her pursuit of Freeman and Jarrell, Cherry was also talking on her cell phone with a 911 operator, apparently attempting to have Freeman arrested in connection with the earlier fight he had with her brother. The officer responding to the 911 call was familiar with Freeman and knew where his parents lived. In an attempt to locate Freeman and investigate Cherry's allegations, the officer proceeded to the home of Freeman's parents.

Unaware of Cherry's call to 911, Freeman told Jarrell to drop him off at his parents' house, which was nearby. When the couple arrived at that residence, they saw the officer who had gone there to investigate Cherry's complaint. Fearing he would be arrested on an outstanding probation warrant, Freeman got out of Jarrell's car and ran away, leaving Jarrell at the scene. Cherry and her brother, who had been riding with her, pulled up behind Jarrell, and Cherry exited her car and began screaming at Jarrell, cursing and threatening her with physical harm. When Jarrell rolled up her car window, Cherry continued to spit at Jarrell and on her car. This confrontation was captured by the video camera on the officer's body pack, and the resulting video was introduced into evidence and played for the jury at trial.[4]

After she received the officer's permission to leave, Jarrell returned home. Freeman returned to their residence later that evening, and then received several threatening phone calls from

---

having dated for approximately two years. Freeman began dating Jarrell almost immediately after his break-up with Cherry.

[4] Neither this videotape nor a transcript of the auditory portions of the same was included in the record on appeal, apparently because such items were not filed as part of the trial transcript. In deciding this appeal, therefore, we did not consider the same, although we did consider the witnesses' direct testimony about the confrontation between Cherry and Jarrell. That testimony, together with the other evidence of record, was sufficient to support Cherry's conviction. Accordingly, we deny the State's motion to supplement the record on appeal with copies of the videotape taken from the officer's body pack, copies of calls to 911 placed by both Cherry and Jarrell, or transcripts of the auditory portions of any of the foregoing.

Cherry's aunt, during which he heard Cherry screaming in the background. These calls prompted Freeman to move his car to the back of the residence, so that it was not visible from the street.

Freeman and Jarrell eventually went to bed, but were later awakened by noises from outside, followed by what sounded like an explosion. The couple went to the window and saw Jarrell's newly-purchased automobile on fire. Jarrell also testified that she saw Cherry, dressed in the same clothes she had been wearing earlier in the evening, running from the scene. Freeman and Jarrell ran outside, and Freeman went to retrieve a hose to turn on the fire. Jarrell ran out to the street, where she saw a red car driving away.

The fire department eventually determined that the fire which destroyed Jarrell's car resulted from arson. Following a police investigation, Cherry was charged with the crime.

At trial, the State presented evidence of two prior incidents showing acts of property damage committed by Cherry following an argument with a former boyfriend or those close to him. The paternal grandmother of Cherry's child testified that in February 2006, Cherry and the woman's son got into an argument, precipitated by the presence of another woman with whom the son was romantically involved. Following the argument, Cherry left the house, using her shoe to break a window on the dwelling as she exited.

The uncle of the same ex-boyfriend testified that in January 2006, he asked Cherry to leave his mother's house because, following an earlier altercation between Cherry and the ex-boyfriend, she had been asked not to return. After the uncle escorted Cherry from the house, she used a metal pipe to break the windshield on his automobile.

After her conviction, Cherry filed a motion for a new trial, which the trial court denied. This appeal followed.

1. Before introducing similar transaction evidence, the State must show that: (1) it seeks to use the evidence of an independent offense or act for an appropriate purpose, such as identity, motive, intent, bent of mind or course of conduct; (2) sufficient evidence establishes that the defendant committed the independent offense or act; and (3) the similarities between the independent offense or act and the crime charged are such that proof of the former tends to prove the latter. *Brooks v. State*.[5] "A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion." Id.

The trial court below admitted the similar transaction evidence

---

[5] *Brooks v. State*, 230 Ga. App. 846, 846 (1) (498 SE2d 139) (1998).

at issue for the purpose of showing Cherry's bent of mind and course of conduct. Cherry argues that this ruling constitutes error, because the prior incidents lacked a sufficient degree of similarity with the current charge of arson. This argument is without merit.

To be admissible, a similar transaction need not be identical to the crime charged in every respect. *Rolle v. State*.[6] This is particularly true where, as here, the evidence is offered to prove something other than identity. Id. Thus, "in determining [the] admissibility of similar transaction evidence" a court must consider both the similarities between the prior acts and the crime charged and the "relevance [of the prior acts] to the issues [in] the case on trial." (Punctuation omitted.) *Brooks*, supra, 230 Ga. App. at 847 (1). See also *Mattox v. State*[7] (depending on the circumstances, "a logical connection [may be found] between crimes which are essentially dissimilar") (punctuation omitted).

Thus, despite Cherry's assertions to the contrary, the trial court did not abuse its discretion in admitting the similar transaction evidence. Each of Cherry's prior acts of property damage, like the arson, occurred after Cherry's anger was provoked either by the behavior of an ex-boyfriend or by an argument with or about an ex-boyfriend. In each prior incident, Cherry expressed her anger and frustration just as she did here, by destroying property belonging to someone with whom her former boyfriend had a close relationship. The prior incidents "were sufficiently similar [to the crime charged] to show [Cherry's] course of conduct or bent of mind to react violently when upset with [men] with whom [she] had been intimate." *Woods v. State*.[8] See also *Brigman v. State*[9] (evidence of way defendant lashed out at previous girlfriends who angered or disappointed him was admissible to show intent, bent of mind, and course of conduct); *Smith v. State*[10] ("[a] prior act can . . . show [a defendant's] actual course of conduct in reacting to disappointment or anger in a [romantic] relationship, evidencing a pattern"); *Howard v. State*[11] (similar transaction evidence probative of defendant's method of resolving disputes with his girlfriends by committing violence against them).

2. In reviewing Cherry's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[6] *Rolle v. State*, 286 Ga. App. 191, 192 (648 SE2d 712) (2007).

[7] *Mattox v. State*, 287 Ga. App. 280, 282 (1) (651 SE2d 192) (2007).

[8] *Woods v. State*, 250 Ga. App. 164, 166 (1) (a) (550 SE2d 730) (2001).

[9] *Brigman v. State*, 282 Ga. App. 481, 485 (2) (639 SE2d 359) (2006).

[10] *Smith v. State*, 232 Ga. App. 290, 295 (1) (501 SE2d 523) (1998).

[11] *Howard v. State*, 228 Ga. App. 775, 776 (1) (492 SE2d 683) (1997).

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation and emphasis omitted.) *Burden v. State*.[12] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Punctuation omitted.) *Waller v. State*.[13]

Cherry argues that the State's evidence showed, at most, her presence at the scene of the arson, and failed to show that she was the person who committed the arson. This argument, however, ignores the fact that the identity of an arsonist "may be proved by circumstantial evidence." (Punctuation omitted.) *Stephens v. State*.[14]

> It is not often possible to make out a case of arson by direct proof . . . showing the connection of the defendant with the commission of the crime, for arson is seldom committed except when there is small chance that the criminal will be actually observed in the execution of his nefarious purpose. . . .

(Punctuation omitted.) *Patterson v. State*.[15]

The evidence below showed that Cherry had a history of expressing her anger by damaging or destroying property; that she had made numerous threats against Freeman and Jarrell in the 12-hour period immediately preceding the arson; that she was seen running from the scene shortly after the fire began; that a car similar to hers was thereafter seen driving away from Jarrell's residence; and that no other person was observed near the scene at or near the time Jarrell's car began to burn. This evidence was sufficient to allow the jury to infer that Cherry was the person who set fire to Jarrell's car. Id. at 443 (3). See also *Garrett v. State*[16] (a conviction based on circumstantial evidence does not require the State to exclude every "bare possibility [that the act could] have been done by somebody else"; the State need only "show to a moral certainty that it was the defendant's act") (punctuation omitted).

For the reasons set forth above, we affirm the trial court's order denying Cherry's motion for a new trial.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

---

[12] *Burden v. State*, 290 Ga. App. 734, 735 (1) (660 SE2d 481) (2008).
[13] *Waller v. State*, 267 Ga. App. 608 (600 SE2d 706) (2004).
[14] *Stephens v. State*, 214 Ga. App. 183, 184 (1) (447 SE2d 26) (1994).
[15] *Patterson v. State*, 202 Ga. App. 440, 442 (3) (414 SE2d 895) (1992).
[16] *Garrett v. State*, 263 Ga. App. 310, 312 (587 SE2d 794) (2003).

DECIDED JULY 15, 2009.

Jon C. Rhoades, for appellant.
Peter J. Skandalakis, District Attorney, Melissa L. Himes, Assistant District Attorney, for appellee.