**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0553. HUGHES v. THE STATE.

PHIPPS, Chief Judge.

John Lorenzo Hughes was convicted of hijacking a motor vehicle, armed robbery, attempted kidnapping, obstruction, and marijuana possession. Pro se on appeal, Hughes challenges the sufficiency of the evidence as to each offense; he also contends that the trial court erred by denying his request to charge the jury on accident, by denying his request to continue the hearing on his motion for new trial, and by rejecting his claims of ineffective assistance of counsel. We affirm.

1. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

So viewed, the state's evidence showed the following. At about 1:00 a.m. on November 20, 2010, a lone driver stopped her BMW at a red light. Hughes quickly approached the car, opened its passenger door, sat down in the front passenger seat, grabbed the woman's purse, put it on his lap, then told her: "Drive or die." The woman saw that Hughes had in his hand a sock, which was covering an object; Hughes was pointing the sock-covered object at her. The object was later revealed to be a large rock, but the woman discerned it at the time to be a gun. Hughes repeatedly threatened the woman that, if she did not cooperate with him, she would die.

The driver fled the car on foot and ran to a nearby gas station parking lot. Hughes slid into the driver's seat. Then, the woman later testified, "I heard the gears scraping and scrubbing as if he did not know how to drive [my] six-speed vehicle," describing the car also as a "stick shift." The vehicle coasted into the middle of the intersection, then stopped.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis in original).

Meanwhile, a marked police cruiser approached the intersection and stopped at the red light. The patrolling officers noted the BMW proceeding slowing through the red light, then stopping in the middle of the intersection; they saw a woman pointing at the BMW and heard her yelling for help and screaming that the man in the BMW had robbed her, taken her car, and tried to kidnap her. The officer driving the patrol car activated its blue lights. Hughes looked up with a startled expression on his face, immediately exited the vehicle, then fled the scene on foot, while holding the woman's purse in his hand. The uniformed police officers chased Hughes on foot, repeatedly commanding Hughes to halt. Hughes dropped the victim's purse, but continued to run until apprehended by police. During a search incident to arrest, police found marijuana in Hughes's pocket.

When initially taken to jail, Hughes was not accepted for booking because he complained of experiencing blurred vision, which he attributed to having been attacked earlier that night by several males. The arresting officer saw no injuries on Hughes, but transported him to a hospital where he was examined by a doctor. Medically cleared, Hughes was returned to jail and booked.

Hughes was the sole witness for the defense. He testified that, shortly after midnight on the night in question, he went to an apartment building that was in the

vicinity of the intersection to conduct a drug transaction. As he was leaving the apartment building, he was struck on the head by a male, and the two of them began fighting. Hughes recounted that several other individuals aided his opponent, and he (Hughes) was struck multiple times in the head and kicked on the sides of his body. Hughes escaped his attackers, and in running away, encountered the BMW stopped at the red light. He testified, "I recall jumping in. And in that state of mind I could have said, 'Drive.' But what I implied to her wasn't that I would kill her, per se, but more of, if we stay here, bad things might happen." Hughes testified that he asked the driver *repeatedly* to drive him away from that neighborhood, while he continued "looking around for these individuals. When I spot[ted] them, I admit I might have screamed at her and called her a name and told her to drive. I'm not going to deny that I did that because, like I said, I was scared for my life at that point." Hughes testified that he never threatened that *he* would harm the driver, asserting, "[M]y implication was that something could happen to us if we stayed there. . . . I think what I said was more along the lines of, drive or we might die or we're going to die." Hughes claimed at trial that he had not had a rock in a sock and that he had told the driver that he wanted neither her car nor her money. Yet, she fled the car. And the car began rolling

4

into the intersection. So he slid into the driver's seat to stop the car, but did not know how to operate its manual transmission.

Hughes was asked why, if he was afraid for his life because of pursuing attackers, he had run *away* from the police when they arrived; he answered that he had panicked because he had drugs in his possession. Hughes was asked to explain why, if he did not want the woman's money, he had taken with him her purse; he answered that, as he was sliding into the driver's seat, his foot became entangled with the shoulder strap of the purse and that "when I went to run, I tripped. I bent down. I picked the purse up and ran and threw the purse down."

Hughes recounted that, after he was arrested, he asked a police officer to tell the woman he was sorry. As Hughes put it at trial, "I was manning up to entering her auto without her consent and scaring her." Hughes further recounted that he underwent testing at a hospital before being booked into jail at about 5:00 that same morning. And at trial, Hughes testified that his booking photograph depicted bruises on his head, which photograph was presented to the jury.

On appeal, Hughes claims that the state's case contained weaknesses and was contradicted by his testimony, mandating a reversal of his convictions.

But any evidentiary weaknesses, conflicts, or inconsistencies were for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[2]

More specifically, Hughes has demonstrated no basis for disturbing the jury's findings that he was guilty as charged of: (i) hijacking a motor vehicle,[3] by obtaining a motor vehicle from another person by use of force and intimidation; (ii) armed robbery,[4] by taking a purse and a car from another person by use of an offensive weapon (a rock in a sock); (iii) criminal attempt to commit kidnapping,[5] by knowingly and intentionally performing an act which constituted a substantial step toward the commission of said crime, by entering an occupied motor vehicle and commanding

---

[2] *Dix v. State*, 307 Ga. App. 684, 686 (1) (705 SE2d 903) (2011) (footnote and punctuation omitted). See *Jackson*, supra; OCGA § 24-4-8 (2011) (providing that the testimony of a single witness is generally sufficient to establish a fact). "Georgia adopted a new evidence code effective January 1, 2013." *Leslie v. State*, 292 Ga. 368, 369 (2) (a), n. 3 (738 SE2d 42) (2013). See Ga. L. 2011, pp. 99, 214 § 101 (providing that the new evidence code "shall apply to any motion made or hearing or trial commenced on or after [January 1, 2013]"). Hughes's trial was held in 2011.

[3] See OCGA § 16-5-44.1.

[4] See OCGA § 16-8-41 (a).

[5] See OCGA §§ 16-4-1; 16-5-40.

6

the driver to "Drive or die," while wielding a rock in a sock; (iv) obstruction,[6] by fleeing and thereby knowingly and willfully hindering police officers in the lawful discharge of their official duties; and (v) violation of the Georgia Controlled Substances Act,[7] by possessing marijuana.

2. Hughes contends that the trial court erred when it declined to charge the jury on the law of accident, which he maintains constituted his sole defense and was authorized by his testimony about that night's events. "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law."[8]

Pursuant to OCGA § 16-2-2, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." As the Supreme Court of Georgia has explained,

---

[6] See OCGA § 16-10-24 (a).

[7] See OCGA § 16-13-30.

[8] *Jones v. State*, 287 Ga. 770, 771-772 (2) (700 SE2d 350) (2010) (citations and punctuation omitted).

"[A]ccident" is an affirmative defense whereby it must be established a defendant acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby.[9]

Contrary to Hughes's claim, his testimony did not authorize a charge on accident. According to Hughes's version of relevant events, Hughes determined to use a passing BMW as his getaway vehicle from his drug deal gone bad. He thus admittedly entered a stranger's car without the driver's consent, frightened her, knowingly placed her life in danger of his pursuing attackers; threatened her that she would be harmed if she did not comply with his demands; and repeatedly ordered her to drive him away, irrespective of her pleas and protest. Hughes's words and acts induced the driver to abandon possession of her vehicle and her purse and to flee on foot because of fear for her personal safety. Hughes testified that he then slid into the driver's seat; but upon realizing that police had arrived, he fled pursuing officers because he knew he had drugs on his person; and as he fled police, he carried with him the driver's purse. Nothing in Hughes's testimony entitled him to a charge on the

---

[9] *Wilson v. State*, 279 Ga. 104, 105 (2) (610 SE2d 66) (2005).

law of accident as contemplated by OCGA § 16-2-2,[10] and the trial court committed no error when it declined to give such a charge.[11]

3. Hughes contends that the trial court erred in rejecting his request to continue the hearing on his motion for new trial.

The record shows that, after Hughes's post-conviction attorney filed a motion for new trial raising claims that trial counsel had rendered ineffective assistance, Hughes wrote a letter to the trial judge expressing dissatisfaction with his post-conviction attorney's performance and thus asking to proceed pro se. Then, at the beginning of the motion for new trial hearing, Hughes insisted that he no longer

_____

[10] See id.

[11] See *Wilson*, supra (holding that, where the defendant's testimony did not raise the issue of accident or misfortune within the meaning of OCGA § 16-2-2, the defendant was not entitled to a charge on the law of accident and thus, the trial court did not err when it declined to give such a charge); *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991) (holding that "a charge on the defendant's sole defense is mandatory *if there is some evidence to support the charge*") (emphasis in original). Accord *Davis v. State*, 290 Ga. 757, 759 (2) (725 SE2d 280) (2012) (explaining that, where defendant was tried for felony murder predicated on a drug transaction and the underlying circumstances were analogous to a robber who had killed someone while fleeing, affirmative defense of self-defense was inapplicable when the accused was attempting to commit or was committing a felony); *Davis v. State*, 269 Ga. 276, 279-280 (3) (496 SE2d 699) (1998) (determining that defendant's version of events did not authorize charge on the law of accident, where it showed "at the least, criminal negligence").

wanted his post-conviction lawyer to represent him and that he wanted to proceed pro se. After Hughes responded to a series of questions posed by the court, the court allowed Hughes to represent himself. Hughes then filed with the court various pro se motions,[12] including an amendment to his motion for new trial.

Hughes asked the court for a continuance, stating that he did not have his case file and, further, that he wanted time to obtain testimony that would support his claim that he was entitled to a new trial. The trial court elected to proceed with the hearing, explaining, "I'm going to hear what you have to ask [your former lawyers]. If it arises from the questioning you need a[nother] witness, we will continue it." The court instructed Hughes, "[I]f you wish to call either one of your lawyers and question them about what they did, then you need to go ahead and do that." Hughes elected to question only his trial lawyer, although his post-conviction lawyer (who by then was no longer representing him) remained in the courtroom.

Near the end of the new trial hearing, Hughes stated that he would have been better prepared had the court continued the hearing. Thus, the trial court ordered Hughes's post-conviction lawyer to provide Hughes with the case file, then the trial

---

[12] These pleadings included a motion for a competency hearing, which is discussed in Division 5 (b), infra.

10

court allotted "each side ten days to file any paperwork they want to file. If there's something you want to file, Mr. Hughes, you can do so, okay? And I'll wait on it." The ten-day period, the court explained, would commence once Hughes received the case file.

The new trial hearing concluded on March 8, 2012. The record before us contains no pleading filed by Hughes after that date but prior to the court's April 12, 2012 order denying Hughes's (amended) motion for new trial. Also on April 12, the trial court entered an order denying Hughes's other pro se motions, which had been filed at the hearing.

Hughes maintains on appeal that he nevertheless was deprived of sufficient time to prepare for his new trial hearing. "In reviewing a trial court's denial of a motion for a continuance, this [c]ourt will not reverse a trial court's decision on a motion for continuance except upon a clear abuse of the trial court's discretion."[13] Moreover, to be entitled to a new trial based upon the denial of his motion for a

---

[13] *Columbus v. State*, 270 Ga. 658, 665 (4) (513 SE2d 498) (1999) (punctuation and footnote omitted); see *Smith v. State*, 290 Ga. 428, 432-433 (6) (721 SE2d 892) (2012) (reviewing for abuse of discretion the trial court's ruling on defendant's motion to continue the hearing on the motion for new trial).

continuance, Hughes has the burden of showing that he was harmed by that denial.[14]

Hughes has failed to carry that burden.[15] Because "there is no showing that a continuance would have benefitted [Hughes], he has not established harm in the denial of the continuance, and the same cannot constitute reversible error."[16]

4. Hughes contends that the trial court erred in rejecting his claim of ineffective assistance of trial counsel.

To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[17] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[18] However, this court is not required to address both components if the defendant has made an insufficient showing on one.[19] Both the performance and prejudice prongs of the ineffectiveness

---

[14] See generally *Columbus*, supra.

[15] See *Miller v. State*, 303 Ga. App. 422, 424 (693 SE2d 637) (2010) ("In the absence of a proffer of . . . testimony or other evidence to demonstrate harm, [the defendant] failed to show that the trial court clearly abused its discretion in denying the continuance.") (citation, punctuation, and footnotes omitted).

[16] Id. at 423.

[17] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[18] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[19] *Whitaker v. State*, 291 Ga. 139, 141 (2) (728 SE2d 209) (2012).

12

inquiry are mixed questions of law and fact.[20] In reviewing a trial court's ruling on a claim of ineffective assistance of counsel, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[21]

(a) Hughes maintains that his trial lawyer failed to sufficiently investigate his case and was not adequately prepared for trial.

(i) Hughes asserts that his trial lawyer should have requested a mental health evaluation, which might have aided his defense. But "[n]o mental evaluation was offered during the hearing on the motion for new trial; therefore, [Hughes] failed to show that further investigation would have established a valid psychiatric defense."[22]

---

[20] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

[21] Id. at 88 (4).

[22] *Cormier v. State*, 277 Ga. 607, 609 (2) (b) (592 SE2d 841) (2004), citing *Strickland*, supra; see *Haygood v. State*, 289 Ga. App. 187, 193 (2) (a) (656 SE2d 541) (2008) ("If a defendant wishes to claim ineffectiveness based on trial counsel's failure to request a psychiatric evaluation, it is not enough to show merely that counsel unreasonably failed to inquire into his mental state – he must show a likelihood that such an evaluation would have affected the outcome at trial.") (footnote omitted).

13

Hughes's speculation does not constitute a showing of professionally deficient performance by trial counsel.[23]

(ii) Hughes complains that his trial lawyer adduced no medical evidence to support his sole defense of accident in that "the defendant arrived at the alleged crime scene via misfortune, defendant [was] running from an assault by individuals who inflicted head trauma upon him." According to Hughes, his trial lawyer should have presented to the jury a document that he claims was created by the hospital where he was treated on the night in question. According to Hughes, the document contained this language: "You have had a head injury which does not appear serious at this time. A concussion is a state of changed mental ability, usually from a blow to the head." As evidence of the document and its content, Hughes relies upon an exhibit attached to his appellate brief. "Exhibits attached to an appellate brief but not appearing in the record transmitted by the trial court cannot be considered by this court and afford no basis for reversal."[24] And Hughes cites nothing in the record.

---

[23] See *Lanier v. State*, 288 Ga. 109, 111 (3) (a) (702 SE2d 141) (2010) (determining that speculation will not support a finding of deficient performance); see also *Cormier*, supra; *Haygood*, supra.

[24] *Jones v. State*, 304 Ga. App. 445, 447 (1), n. 10 (696 SE2d 346) (2010) (citation and punctuation omitted).

14

The transcript of the new trial hearing does show, however, that Hughes asked his trial lawyer whether he had "subpoena[ed] [hospital records] to show that I had a concussion or a head injury or that I had got jumped?" The lawyer responded that, while the medical records referred to statements made to medical personnel, "your statement to the medical doctor or the nurse, whoever was talking to you, was not substantiated by any medical tests. . . . [T]here was no substantive evidence in the medical record that you suffered a concussion."

Given the foregoing, Hughes failed to show that his trial lawyer erred by not showing the jury the purported medical documentation of his having suffered a recent concussion. Moreover, Hughes's trial lawyer did seek to otherwise support Hughes's claim that he had suffered a head injury during a recent attack. The lawyer introduced in evidence Hughes's booking photograph, then elicited testimony from Hughes that the booking photograph showed "an irritation, like, a bruise of some sort" on Hughes's forehead and that "[t]he right side where the initial blunt trauma happened at is kind of puffy and swollen if you look at my face in the picture."

(iii) Hughes complains that his trial lawyer did not further present expert medical or psychological testimony of his cognitive ability at the time he entered the BMW (in light of having recently received a head injury). Because Hughes made no

15

proffer on motion for new trial as to such an expert's testimony, however, this complaint demonstrates no deficient performance.[25]

(iv) Hughes complains that his trial lawyer did not interview, prior to trial, the individuals called as trial witnesses by the state.

Hughes's trial lawyer testified that his several attempts to contact the driver of the BMW had failed because she had not been cooperative in speaking with him.[26] And at any rate, because Hughes made no showing on motion for new trial that an interview with any state witness would have produced evidence helpful to his defense, this complaint fails to show any error by trial counsel.[27]

---

[25] See *Lanier*, supra; see also *Pringle v. State*, 281 Ga. App. 230, 234 (2) (a) (635 SE2d 843) (2006) (absent proffer of what testimony of expert would have been at trial, defendant cannot show a reasonable probability that he was prejudiced by counsel's failure to hire such an expert).

[26] See generally *Terry v. State*, 284 Ga. 119, 121 (2) (b) (663 SE2d 704) (2008) (holding that, where trial counsel testified that he attempted to interview witnesses, but they would not speak with him, claim of ineffective assistance for failure to interview said witnesses had no merit).

[27] See *Hendricks v. State*, 290 Ga. 238, 241-242 (4) (b) (719 SE2d 466) (2011) (determining that defendant had failed to meet his burden of showing deficient performance on counsel's part, where defendant asserted that counsel erred by not calling witnesses, but defendant did not show what favorable evidence would have been elicited from such witnesses); see also *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002) (trial counsel's alleged omission cannot be deemed prejudicial where defendant has not shown that the omitted evidence would have been favorable

(b) Hughes asserts that his trial lawyer failed to advise him fully on the "consequences of plea offers, recidivist, and mandatory sentencing." Hughes cites nothing in the record showing that the state sought, or that the trial court imposed, any mandatory sentence or recidivist punishment. What is more, Hughes did not raise these grounds on motion for new trial and thus they were waived.[28]

The pleadings, together with the transcript of the new trial hearing, show that, relative to a plea offer by the state, Hughes's contention was that his trial lawyer had withheld from him, or failed to timely communicate, any such offer.[29] Hence, Hughes's trial lawyer testified at the new trial hearing that he had communicated to Hughes prior to trial the only plea offer extended by the state; that he (the lawyer) had strongly recommended to Hughes that he accept that offer; and that Hughes had

to his defense).

[28] Hughes did not question his trial lawyer specifically as to these matters. See *Mitchell v. State*, 290 Ga. 490, 492 (4) (b) (722 SE2d 705) (2011) (determining that ineffectiveness claim not argued on motion for new trial was waived for purposes of appeal); *Nichols v. State*, 285 Ga. 784, 785 (4) (a) (683 SE2d 610) (2009) (explaining that where the allegation of ineffectiveness raised on appeal differs from that raised before the trial court, the ground is deemed waived); *Ogden v. State*, 266 Ga. App. 399, 401 (2) (a) (597 SE2d 491) (2004) (same).

[29] In his (amended) motion for new trial, Hughes alleged that "the Defendant's Trial Counsel was ineffective in failing to inform the Defendant of plea offers made by the State."

emphatically rejected it. Hughes's trial lawyer elaborated that Hughes had believed from the beginning of the prosecution that there was a strong likelihood of being acquitted based upon the defense that was thereafter pursued at trial and that he (the lawyer) had discerned no indication from Hughes that, had the state extended a different plea offer, Hughes would have entertained it. Once the trial began, Hughes's trial lawyer recalled, the prosecutor notified him that the state's plea offer was withdrawn. But according to Hughes, his trial lawyer had not informed him of any plea offer prior to trial. Hughes testified at the new trial hearing, "I don't recall him making me an offer, at all, until the second day of trial."

> It was the function of the trial court at the motion for new trial hearing to determine witness credibility and resolve any conflicts in the testimony. In its role as factfinder, the trial court was authorized to believe the testimony of trial counsel and reject any conflicting testimony from [Hughes]. And on appeal, we must accept the trial court's factual findings and credibility determinations unless they are clearly erroneous. In this case, there is no clear error given trial counsel's testimony . . . that . . . he conveyed all plea bargain offers from the state to [Hughes], and [Hughes] rejected those offers.[30]

---

[30] *Butler v. State*, 319 Ga. App. 350, 353 (734 SE2d 567) (2012) (citations and punctuation omitted).

5. Finally, Hughes contends that he received ineffective assistance of his post-conviction counsel who represented him on motion for new trial until, in response to Hughes's demands, the trial court allowed Hughes to represent himself. For the following reasons, Hughes has demonstrated no merit in this contention.

The Supreme Court of Georgia held in *White v. Kelso*[31] that "a pro se petitioner is in a position similar to that of new counsel"[32] and that "[n]ew counsel must raise the ineffectiveness of previous counsel at the first possible stage of post-conviction review."[33]

(a) Hughes charges his post-conviction lawyer with "failure to bring out the omitted evidence." Hughes points again to purported hospital documentation attached to his appellate brief as an exhibit, but as we have discussed above,[34] Hughes has

---

[31] 261 Ga. 32 (401 SE2d 733) (1991).

[32] Id. at 33.

[33] Id. at 32; see generally *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (explaining that an ineffectiveness claim must be raised "at the earliest practicable moment" requires that that claim be raised *before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time).

[34] See Division 4 (a) (ii), supra.

neither shown, nor asserted, that the exhibit was made a part of the record.[35] What is more, prior to the presentment of evidence at the new trial hearing, Hughes had begun representing himself. And "when a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel."[36]

After Hughes began representing himself at the new trial hearing, the court accepted Hughes's pro se motions, including an amended motion for new trial. Hughes was specifically advised by the court that he could call his post-conviction lawyer to the stand for questioning, but Hughes elected not to do so.[37] Hughes did not

---

[35] See *Jones*, 304 Ga. App. at 447 (1) , n. 10 (concerning exhibits attached to appellate briefs but not appearing in the record transmitted by the trial court).

[36] *Mullins v. Lavoie*, 249 Ga. 411, 412-413 (290 SE2d 472) (1982). Accord *Fields v. State*, 310 Ga. App. 455, 459 (4) (714 SE2d 45) (2001) (holding that where appellant "proceeded pro se at trial, he cannot raise an ineffective assistance of counsel claim with regard to issues that arose during trial").

[37] See *Dickens v. State*, 280 Ga. 320, 321-322 (2) (627 SE2d 587) (2006) (explaining that "[c]ounsel's testimony assessing an uncalled witness's testimony is pertinent to [ineffectiveness] inquiry because it serves to explicate counsel's decision making process"); *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003) ("In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for new trial hearing, it is extremely difficult

20

enter into evidence any hospital documentation. And although Hughes was afforded opportunity after the hearing to "file any paperwork" he wished the trial court to consider for purposes of his (amended) motion for new trial, Hughes filed nothing.

Under these circumstances, Hughes has failed to demonstrate that his post-conviction lawyer performed deficiently for "failure to bring out the omitted evidence."[38]

(b) Hughes complains that his post-conviction lawyer did not pursue a mental competency hearing. But upon representing himself, Hughes sought such a hearing.

---

to overcome this presumption.") (citation and punctuation omitted).

[38] See *Shank v. State*, 290 Ga. 844, 848 (5) (a) (725 SE2d 246) (2012) ("There is a strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct, and generalized claims to the contrary not supported by affirmative evidence are insufficient to show deficient performance.") (citation omitted); *Wilson*, 277 Ga. at 200 (2) (concluding that where instances of ineffectiveness alleged by defendant involved matters as to which evidence was required and no evidence was produced to establish the matters, the trial court correctly rejected ineffectiveness claim); *Mullins*, supra; *Hammock v. State*, 311 Ga. App. 344, 346 (2) (c) (715 SE2d 709) (2011) (noting that defendant could only speculate as to what the missing evidence might have shown and concluding that such speculation was insufficient to authorize a finding that defense counsel ineffectively overlooked beneficial evidence); see also *Shaw v. State*, 292 Ga. 871, __ (3) (a) ( SE2d ) (2013), citing *Chandler v. United States*, 218 F3d 1305, 1314, n. 15 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of competent performance]. Therefore, where the record is incomplete or unclear about counsel's actions, we will presume that he did what he should have done . . . .") (citation and punctuation omitted).

Specifically, one of the pro se motions that Hughes filed at the new trial hearing was a motion for a competency hearing to determine "[his] degree of criminal responsibility and mental capacity at the time of the acts of alledge (sic) crimes." The trial court responded from the bench, "I deny that." And thereafter, on April 12, 2012, with no additional "paperwork" having been filed by Hughes, the trial court entered an order thereon.

Hence, because the trial court was presented and ruled upon the matter, this complaint demonstrates no prejudice attributable to Hughes's post-conviction lawyer's performance.[39]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[39] See *Mullins*, supra; *Fields v. State*, 310 Ga. App. 455, 458-459 (4) (714 SE2d 45) (2011) (rejecting claim of ineffective assistance of trial counsel, where defendant received his requested pro se status prior to trial and was thus allowed to file pretrial motions on his own behalf, which motions were addressed by the trial court; determining that the defendant had failed to demonstrate how counsel's pretrial representation had prejudiced him).