**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 7, 2013**

# In the Court of Appeals of Georgia

A13A1513. REMBERT v. THE STATE.

BRANCH, Judge.

Craig Renard Rembert, Jr., was tried by a Houston County jury and convicted of a single count of armed robbery.[1] He now appeals from the denial of his motion for a new trial, arguing that the trial court erred in denying his motion for a continuance and instead excluding his alibi evidence. Rembert also claims that the trial court erred in admitting testimony that a witness had identified him from a video recording of the robbery, in admitting similar transaction evidence, and in denying his motion for a mistrial. Additionally, because the trial judge had served as the prosecutor in the case resulting in the similar transaction conviction, Rembert contends that the judge should have recused herself sua sponte from the current case. Finally, Rembert asserts that

---

[1] OCGA § 16-8-41 (a).

he received ineffective assistance of counsel. We find no merit in any of these claims of error and therefore affirm the denial of Rembert's new trial motion.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that on the evening of January 9, 2011, Heather Jacobs was working at Seanna's Lucky Cabin, a business that operated a game room and gift shop. The entrance to the business was always locked, and to gain admittance patrons had to ring the doorbell. An employee would admit prospective customers only if they were known to the employee or could provide the employee with a reference – i.e, the name of another known customer who had referred them to the business. On the night in question, Jacobs admitted a man she later identified as Rembert to Seanna's. She admitted the man because, even though she did not know him by name, she had seen him in the business before and recognized him as a customer. The man waited until he was the only customer in the business and then approached Jacobs and asked her if she could change a $20 bill. When Jacobs opened the cash register to make change, the man pulled out a gun and told her to give him all the money in the register. After Jacobs complied with the

2

man's demand, he took her cell phone and forced her into the shop's restroom. Following the incident, Jacobs used the cell phone of an arriving customer to report the robbery.

The robber was captured on video by the security cameras in the business. Seanna Milam, the business owner, provided police with a copy of videos taken by two different cameras and she also kept a copy of the videos for herself. The day after the robbery Milam watched the videos with her daughter and her daughter's boyfriend, Christopher Daly. Daly, who had gone to high school with Rembert, thought he recognized Rembert on the video. Daly located a picture of Rembert in his high school yearbook, which Daly's girlfriend then e-mailed to Jacobs. Jacobs recognized the picture as being that of the robber and provided Rembert's name to the investigating officer. Police then prepared a photographic line up for Jacobs, using the photo from Rembert's driver's license[2] and the photos of five other individuals who resembled Rembert. When shown the pictures, Jacobs "immediately" pointed to Rembert's picture and identified him as the man who robbed her. Based on this identification, Rembert was arrested and charged with armed robbery.

---

[2] The photograph from Rembert's driver's license was taken approximately ten years after the photo from the highschool yearbook.

3

Prior to trial, the State served a discovery request on defense counsel in which it asked that Rembert provide the State with notice of any alibi evidence he intended to present no later than five days prior to trial. Defense counsel did not respond to this request. On the morning of trial, before the jury was struck, Rembert's lawyer requested a continuance, stating that Rembert had just informed him that Rembert had an alibi. The attorney explained that Rembert's mother and brother would serve as alibi witnesses, as both claimed that Rembert was with them at the mother's home at the time of the robbery. Rembert's lawyer further stated that Rembert's mother had apparently sent the lawyer an affidavit setting forth facts in support of her son's alibi, but that he had never received it. According to the lawyer, he had been unable to have significant contact with Rembert prior to trial because the current case had led to the revocation of Rembert's probation on a different charge, and Rembert had been removed from the county jail and sent to prison.

In a subsequent discussion with the trial judge, Rembert admitted that he did not tell his attorney about his alibi until the morning of trial. Rembert also stated that this was because he only met with his attorney on two occasions: at the probation revocation hearing and the morning of trial. Rembert also claimed that he had tried to talk to his defense counsel at the probation revocation hearing about a number of

4

issues, including his alibi, but the lawyer had told him that such information would "matter" only at trial.

The judge denied the motion for a continuance, noting that the current charge had served as the basis for the revocation of Rembert's probation; that the lawyer had represented Rembert at the probation revocation hearing; that the hearing was a full evidentiary hearing; and that no mention of an alibi was made at that hearing. The trial court subsequently granted the State's motion to exclude Rembert's alibi evidence, based on Rembert's failure to provide timely notice of his intent to present such evidence.

Also prior to trial, the State provided notice that it would be presenting similar transaction evidence. Following a hearing, the trial court ruled that it would allow the evidence, finding that it was probative both as to Rembert's bent of mind and course of conduct. The State then pointed out that the trial judge had served as the prosecutor in the case that resulted in the similar transaction conviction.[3] The trial judge expressed that she had been unaware of this fact, stating: "I will note for the record

---

[3] The conviction was the result of a negotiated plea agreement, pursuant to which Rembert, who had been charged with armed robbery, pled guilty to the lesser offense of robbery by force. At the time of the prosecution and plea agreement, the trial judge was serving as an assistant district attorney, and she signed the plea agreement on behalf of the State.

5

. . . I have zero independent recollection about [Rembert's earlier] case, except Mr. Rembert's name was vaguely familiar to me."

Following his conviction, Rembert filed a motion for a new trial. At the hearing on that motion, Rembert presented evidence regarding his alibi defense and whether his attorney was or should have been aware of that defense prior to trial. Rembert testified that he gave his attorney the information related to his alibi on the day of his probation revocation hearing, several weeks in advance of trial. He reminded his attorney of his alibi on the morning of trial, at which point the lawyer made the unsuccessful motion for a continuance. Rembert also introduced the signed, notarized affidavits of both his mother and his brother, each of which was dated July 14, 2011,[4] and in which both the mother and the brother averred that at the time of the robbery Rembert was with them, at the mother's home. Both the mother and the brother testified at the hearing and confirmed the information set forth in their respective affidavits. Rembert's mother also testified that she gave the affidavits to Rembert's trial lawyer several weeks before trial, and that the attorney then instructed her to have the affidavits notarized. The affidavits were notarized within a week after the mother's conversation with the attorney and the notarized copies were then sent to him.

---

[4] Jury selection occurred on July 18, 2011 and trial began on July 19.

6

Rembert's trial counsel testified that the notarized affidavits of the mother and brother were in his case file, and that he received them in his office on July 18, 2011, the day of jury selection. Specifically, the attorney returned to his office following jury selection and found the affidavits in his in-box. Although he could not remember the precise date he first learned of Rembert's alibi, the attorney was sure that he had no knowledge of the alibi at the probation revocation hearing. Additionally, there was nothing in the attorney's file to indicate he had any information concerning Rembert's alibi until the morning of jury selection, and he could not recall any conversation with Rembert's mother prior to that time in which she mentioned an alibi. The attorney further testified that if he had been informed of the alibi in advance of trial, he would have followed his standard practice of providing alibi notice to the State and subpoenaing the necessary witnesses. His file, however, reflected that he had done neither of these things.

The trial court denied Rembert's new trial motion, and this appeal followed.

1. We first address Rembert's claim that the trial court erred in denying his motion for a continuance and granting the State's motion to exclude his alibi evidence. Under Georgia law, a defendant is required, upon demand by the State, to provide written notice of his intent to rely upon alibi evidence, and such notice must be

7

provided no later than ten days prior to trial. OCGA § 17-16-5 (a). Where a defendant fails to provide such notice, a trial court "may order the defendant to permit the discovery or inspection [of the evidence or] interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed." OCGA § 17-16-6. The choice of what sanction, if any, to impose for the defendant's discovery violation, including a failure to provide the State with notice of his alibi, is within the discretion of the trial court. *Theophile v. State*, 295 Ga. App. 517, 520 (1) (672 SE2d 479) (2009). Here, Rembert contends that the trial court abused its discretion in excluding his alibi evidence because there was no showing that Rembert acted in bad faith or that the State was prejudiced by his failure to disclose this evidence in a timely fashion. We disagree.

When excluding evidence based on a party's discovery violation, a trial court is not required to make specific findings of fact regarding bad faith and prejudice. *Theophile*, 295 Ga. App. at 520 (1). Rather, "[i]mplicit in the trial court's decision to exclude [the evidence] is the determination that prejudice and bad faith were shown." (Punctuation and footnote omitted.) Id. And on appeal, we will affirm the trial court's

8

implicit findings of bad faith and prejudice so long as there is some evidence to support them. Id.

With respect to the element of prejudice, a court may infer that the State is prejudiced when the prosecution "does not have the full ten days to investigate alibi evidence." (Citations omitted.) *Huckabee v. State*, 287 Ga. 728, 732 (3) (699 SE2d 531) (2010). This is because where "[t]he State is denied the ten days authorized by law in which to investigate and refute the alleged alibi, . . . the development of . . . evidence [to refute the alibi] is clearly hampered, if not rendered impossible." (Citations and punctuation omitted.) *Freeman v. State*, 245 Ga. App. 384, 385 (2) (537 SE2d 776) (2000). Thus, the fact that the State did not learn of Rembert's alleged alibi until the morning of jury selection supports the trial court's implicit finding that the prosecution was prejudiced by Rembert's failure to comply with the State's discovery request.

Additionally, Rembert presumably knew of his alibi at the time of his arrest in March 2011. Yet by his own admission, he failed to mention that alibi to the arresting officer or the investigating officer. Nor did he assert his alibi at the evidentiary hearing held on the issue of his probation revocation, and he admitted that he did not

9

inform his attorney of his alibi until the morning of trial.[5] Moreover, during the approximately six months that elapsed between Rembert's arrest and trial, neither of his alibi witnesses (who were his mother and his brother) came forward to inform either the prosecution or Rembert's lawyer that Rembert was with them at the time of the robbery.[6] These facts support a finding that Rembert acted in bad faith when he failed to provide the State with timely notice of his alibi. See *Freeman*, 245 Ga. App. at 385 (2) (bad faith shown where defendant "presumably knew about the alleged alibi

---

[5] As noted supra, at the motion for new trial hearing, Rembert contradicted his earlier statements and testified that he had informed his attorney of his alibi at the probation revocation hearing. Defense counsel, however, disputed Rembert's assertion, testifying that he had no knowledge of the purported alibi at the time Rembert's probation was revoked. The trial court clearly credited Rembert's statements at the pre-trial hearing and the testimony of defense counsel over Rembert's testimony at the hearing on his motion for a new trial. "And on appeal, we must accept the trial court's factual findings and credibility determinations unless they are clearly erroneous." *Hughes v. State*, ___ Ga. App. ___ (4) (746 SE2d 648) (2013) (citation and punctuation omitted). The record here reveals no such error.

[6] Again, although Rembert's mother and brother testified at the motion for new trial hearing that they provided defense counsel with their affidavits attesting to Rembert's alibi several weeks in advance of trial, that evidence was not undisputed. Trial counsel testified that he did not receive the affidavits until after jury selection had occurred, and the dates on the affidavits themselves reflect that they were executed less than a week before trial. Given this conflicting evidence, the trial court, sitting as the finder of fact, "was authorized to believe the testimony of trial counsel and reject any conflicting testimony from [Rembert's mother and brother]." (Citation and punctuation omitted.) *Hughes*, ___ Ga. App. at ___ (4).

10

witness but failed to disclose her name to defense counsel until the day before trial, and the only excuse defense counsel offered for [his client's] failure to notify him of the witness was that [the client] had 'been in the system'"); *Huckabee*, 287 Ga. at 732 (3) (defendant acted in bad faith where "[d]uring the ten or eleven months" that lapsed between the defendant's arrest and his trial, "he never advised his attorneys he had an alibi, and none of his proposed alibi witnesses came forward to say [defendant] was somewhere else at the time of the crime[,]" and defendant "provided no justification or valid excuse for his failure to disclose his alibi at an earlier time"); *Sullivan v. State*, 242 Ga. App. 839, 841 (4) (531 SE2d 367) (2000) (fact that belatedly disclosed alibi witnesses were the defendant's relatives, friends, neighbors, co-workers, and employers supported the trial court's finding that defendant acted in bad faith in failing to identify those witnesses in a timely fashion).

As the foregoing discussion demonstrates, there is some evidence supporting the trial court's implicit findings that in failing to come forward earlier with information concerning his alibi Rembert acted in bad faith and that his conduct prejudiced the State. Accordingly, the trial court did not abuse its discretion when it

11

denied Rembert's motion for a continuance and instead excluded Rembert's alibi evidence.[7]

2. Rembert argues that the trial court erred in allowing Christopher Daly to testify that, upon viewing the video of the robbery, he believed he recognized Rembert. As Rembert acknowledges in his brief, however, he did not object to Daly's testimony at trial. He nevertheless contends that this alleged error may be considered under a "plain error" analysis. This argument is incorrect.

Under Georgia law, plain error review in criminal cases is limited to alleged error occurring "in three circumstances: the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion [as to what the evidence has

---

[7] Nor do we find any merit in Rembert's assertion that the State waived any objection to his discovery violations when it failed to move for a continuance. The case upon which Rembert relies for this argument, *Dickerson v. State*, 241 Ga. App. 593 (526 SE2d 443) (1999), stands for the proposition that where a party seeks to assert on appeal an error based upon the opposing party's discovery violations, the appealing party must have sought a remedy for those violations in the trial court. Thus, because Dickerson had failed to seek a continuance to investigate information about a prosecution witness that was not disclosed prior to trial, he had waived his right to argue that, in light of the discovery violation, the trial court erred in admitting the witness's testimony. Id. at 595 (2). In this case, however, the State was not the party that engaged in the discovery violation and it is not asserting any error on appeal. Rather, the State complained of the violation below and received the relief it requested.

shown], and a jury charge affecting substantial rights of the parties."[8] (Citation omitted.) *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). Thus, because "plain error review does not currently apply to allegations regarding the improper admission of evidence," id. (citations omitted), and because Rembert failed to object to the testimony at issue, this claim of error is not properly before this Court. *Jackson v. State*, 292 Ga. 685, 689 (3) (740 SE2d 609) (2013).

Nevertheless, because Rembert also argues that trial counsel was ineffective in failing to object to Daly's testimony, we will review the admission of that testimony in the context of Rembert's ineffective assistance of counsel claim. See Division 6 (a), infra.

3. At trial, the State introduced similar transaction evidence relating to Rembert's previous conviction for robbery by force and on appeal, Rembert contends that the admission of this evidence was error. We disagree.

---

[8] Georgia's new evidence code, which applies to cases tried after January 1, 2013, allows a court to consider "plain errors affecting substantial rights although such errors were not brought to the attention of the court." OCGA § 24-1-103 (d). Because Rembert was tried in July 2011, however, this code section is inapplicable to the current case.

The State may introduce similar transaction evidence after first demonstrating that it seeks to use the evidence of an independent offense or act for an appropriate purpose, such as to show motive, intent, bent of mind or course of conduct; that sufficient evidence establishes that the defendant committed the prior act; and that the similarities between the independent offense or act and the crime charged are such that proof of the former tends to prove the latter.[9] *Cherry v. State*, 299 Ga. App. 194, 196 (1) (682 SE2d 150) (2009). "A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion." (Citation, punctuation and footnote omitted.) Id.

At trial, the State presented the testimony of the victim of Rembert's previous crime, who testified that at the time of the incident she was working at a local skating rink; that as the business was closing Rembert came in with two other men; and that Rembert pointed a gun at her and demanded money. The victim further explained that

[9] For trials occurring after January 1, 2013, the new evidence code permits the admission of similar-transaction evidence for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but not for the purpose of proving "course of conduct" or "bent of mind." OCGA § 24-4-404 (b). See generally *Harvey v. State*, 292 Ga. 792, 794 (741 SE2d 625) (2013).

14

although Rembert's face was partially concealed by a bandana, she recognized Rembert because he had been a "frequent patron of the skating rink for many years."

The trial court admitted the similar transaction evidence for the purpose of showing Rembert's bent of mind and course of conduct. Rembert argues that the admission of this evidence constitutes error, because the above-referenced testimony, which showed that Rembert worked with accomplices and wore a mask, demonstrated that the prior incident lacked a sufficient degree of similarity with the current crime. This argument is without merit.

"To be admissible, a similar transaction need not be identical to the crime charged in every respect. This is particularly true where, as here, the evidence is offered to prove something other than identity." (Citation and footnote omitted.) *Cherry*, 299 Ga. App. at 197 (1). Thus, "[w]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question." (Citation and punctuation omitted.) *Phillips v. State*, 287 Ga. 560, 564 (4) (697 SE2d 818) (2010). In both incidents at issue, the victims were women who worked at a local business that Rembert patronized. Each of the robberies was timed so that the female employee was alone in the business, and in both instances the robber pulled a gun, pointed it at the

15

victim, and demanded money. Given these similarities, and because the jury was allowed to consider this evidence only in determining Rembert's bent of mind and course of conduct rather than his identity as the robber, the trial court did not abuse its discretion in admitting the similar transaction evidence. See *Grimes v. State*, 280 Ga. 363, 364-365 (2) (628 SE2d 580) (2006) (trial court did not err in admitting evidence of defendant's prior act of armed robbery, which occurred nearly 20 years earlier, "because, like the present crime, it involved the robbery of the proceeds of a business establishment through the use of a handgun and was, therefore, sufficiently similar to the current armed robbery charges") (citation omitted); *Guyton v. State*, 272 Ga. 529, 531 (3) (531 SE2d 94) (2000) (sufficient similarity between prior incident and crime for which defendant was being tried where "[b]oth offenses involved attacks upon women who were alone in which a silver handgun was pointed at the victims and they were ordered to relinquish their property[,]").

4. During the victim's testimony at trial, she was asked how many times she had seen the video of the robbery and she responded, "I saw it for the first time during the parole revocation hearing[,] as I explained what was happening."[10] Defense counsel

---

[10] Although the victim referred to the proceeding as a parole revocation hearing, it appears that it was in fact a probation revocation hearing.

16

then moved for a mistrial based on the witness's reference to the parole revocation hearing. The trial court denied that motion,[11] and Rembert challenges this ruling on appeal. We find no error.

"Whether to grant a mistrial is a matter within the discretion of the trial court, and that discretion will not be interfered with on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Punctuation and footnote omitted.) *Jackson v. State*, 316 Ga. App. 128, 131 (2) (728 SE2d 774) (2012). When deciding whether, in denying a motion for a mistrial, the trial court abused its considerable discretion, we consider, inter alia, the other evidence in the case. See *Russell v. State*, 308 Ga. App. 328, 330 (707 SE2d 543) (2011). Here, as the trial court pointed out, the crime for which Rembert was on probation was presented to the jury as a similar transaction. And the jury instruction on similar transaction made clear that the jury could consider evidence that Rembert had previously committed another crime only for the limited purpose of determining Rembert's bent of mind or course of conduct. As the jury was already aware that Rembert had committed a prior crime, the mere mention of a "parole: revocation hearing supplied no new information to the

---

[11] The trial court offered to provide a curative instruction but defense counsel declined, stating that he would rather have the issue "left alone."

17

jury. Accordingly, a mistrial was not essential to the preservation of Rembert's right to a fair trial. Under these circumstances, we find no abuse of discretion by the trial court in denying Rembert's motion for a mistrial.

5. Rembert acknowledges that he did not move to recuse the trial judge, but nevertheless contends that the trial judge should have recused herself sua sponte and that her failure to do so constitutes reversible error. Again, we disagree.

The only basis for recusal asserted by Rembert is that the judge had served as the assistant district attorney who prosecuted him with respect to the similar transaction. Under Georgia law, however, "the fact that a judge[,] in the judge's previous capacity as district attorney[,] prosecuted the defendant on *another* charge not currently pending before the judge, is not, standing alone, a ground for disqualification." (Citations omitted; emphasis in original.) *Leverette v. State*, 291 Ga. 834, 835 (1) (732 SE2d 255) (2012). See also *Brown v. State*, 307 Ga. App. 99, 105 (3) (a) (ii) (704 SE2d 227) (2010) ("a judge is not automatically disqualified from sitting or acting in criminal cases merely on the ground that the judge, in prior employment, has previously prosecuted the defendant in unrelated criminal proceedings") (punctuation and footnote omitted). Accordingly, the trial judge's failure to recuse herself presents no basis for reversal.

18

6. Rembert argues that trial counsel was ineffective in failing to object to the testimony of Christopher Daly; in failing to move for the recusal of the trial judge; and in failing to consult with Rembert and adequately investigate his case. To prevail on an ineffective assistance claim, Rembert must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Rembert cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Causey v. State*, 319 Ga. App. 841, 842 (738 SE2d 672) (2013).

With respect to the first prong of the *Strickland* test, deficient performance, Rembert must show that his attorney performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms. *Strickland*, 466 U. S. at 687-688 (III) (A). To demonstrate that he suffered prejudice as a result of his attorney's performance, Rembert must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (2)

19

(737 SE2d 98) (2013), citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986).

(a) Rembert contends trial counsel should have objected to Daly's testimony that he recognized Rembert on the video of the robbery because it is "improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions." (Punctuation and footnote omitted) *Grimes v. State*, 291 Ga. App. 585, 590 (2) (662 SE2d 346) (2008). Pretermitting whether trial counsel's failure to object to Daly's testimony on these grounds constituted deficient performance, Rembert cannot show that this testimony prejudiced him.

The victim testified that she was familiar with Rembert, having seen him on at least one prior occasion at Seanna's Lucky Cabin, a month or two before the robbery; that she saw the robber's face multiple times on the night in question; that several times that evening she was within two feet of the robber; and that the room in which she observed the robber was "pretty well lit," as additional lighting had just been added. The evidence also showed that when shown a photographic line up that included pictures of Rembert and five other men that resembled him, the victim

"immediately" identified Rembert as the robber. Moreover, the victim identified Rembert at trial, and she testified that the man seen on the video was the man who robbed her. The video was played for the jury, and in it the robber's face can be seen from several different angles. Given the overwhelming evidence identifying Rembert as the robber, he cannot show a reasonable probability that, in the absence of Daly's testimony, the outcome of his trial would have been different.

(b) Rembert also contends that trial counsel should have moved to recuse the trial judge, based on the fact that she had previously prosecuted Rembert. As explained in Division 5, supra, however, the judge's previous prosecution of Rembert, in an entirely separate case, does not by itself constitute grounds for the judge's recusal. Because a motion to recuse the trial judge would have been meritless, Rembert can show neither that his trial counsel performed deficiently nor that he suffered prejudice as a result of that performance. *Williams v. State*, 273 Ga. App. 213, 218 (3) (b) (614 SE2d 834) (2005).

(c) Rembert argues that if trial counsel "had adequately consulted with [Rembert] or investigated, he would have learned of . . . Rembert's alibi sooner" and provided the required notice to the State, and Rembert would have been able to present his alibi evidence at trial. Regardless of whether trial counsel performed

21

deficiently in this regard, Rembert cannot show that he was prejudiced by the exclusion of his alibi evidence, which consisted only of the testimony of his mother and brother. The evidence identifying Rembert as the robber, however, which included eyewitness testimony and a video showing the robber, was overwhelming. "Under these circumstances, [Rembert] cannot show a reasonable probability that the outcome of the trial would have been different had counsel met the notice requirements of OCGA § 17-16-5 (a) and presented the alibi defense." (Footnote omitted.) *Jones v. State*, 266 Ga. App. 679, 683-684 (2) (598 SE2d 65) (2004).

For all of the reasons set forth above, we affirm the trial court's denial of Rembert's motion for a new trial.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*